THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAMONT EVANS, Defendant-Appellant.

Third District   No. 78-276

Opinion filed December 10, 1979.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (John X. Breslin and Marc D. Towler, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

On July 21, 1977, the defendant, Lamont Evans, was indicted for the offense of theft of property having a value in excess of $150. Prior to trial, the defendant filed a motion to suppress all video tapes and other recordings of intercepted conversations made in connection with this case, alleging the failure of the State to comply with the return procedure set forth in the Illinois Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108A—7(b)).

At the suppression hearing, it was stipulated that on April 4, 1977, an order was issued authorizing the use of an eavesdropping device in connection with a storefront fencing operation set up by United States Treasury agents. Extensions of this authorization were granted on April 14, April 25, May 5, May 14, May 23, June 1, June 10, June 20, June 29, and July 11, 1977. This final extension covered the time period from July 11 through July 20, 1977. On May 11, 1977, 29 tapes were returned and reviewed by the authorizing judge. On July 15, 1977, an additional 85 tapes were returned and reviewed. The video tape relevant to the case at

bar was made June 29, 1977, and returned July 15, 1977. Based on this evidence, the motion to suppress was denied.

The cause proceeded to trial before a jury. The State's first witness was William Sletteland, the manager of the Musicland store at Jefferson Square Mall in Joliet. Sletteland testified that he put a number of Craig tape units on display in the Musicland store on June 27, 1977, but on the morning of June 30, he found an empty spot in the display and observed that the tape units were missing. Sletteland testified that, after checking the store records, he determined the units had not been sold. He stated that neither the defendant nor anyone else had authority to remove the tape units from the store and placed the fair market value of the three tape units at $349.85.

Also testifying for the State were two United States Treasury agents who operated the Tri-City Insurance Salvage Company, a storefront fencing operation in Joliet. Their testimony indicated that at about 4:30 p.m. on June 29, 1977, three black males knocked on the door of the store and then entered. When the agents asked their names, the three gave their first names. Both agents identified the defendant at the trial as being one of the three and testified that both the defendant and Doniel Bradley were carrying sacks containing tape players when they entered the store. There were two players in the defendant's sack.

One of the agents commented, "Someone must have had their back turned" and the three replied, "Yeah" and laughed. Bradley said, "We know how to do it." Tickets attached to each tape player indicated a price of $125. One of the agents offered $100 for the three players but the offer was refused. A price of $50 per tape player was eventually agreed upon. One of the agents then asked if it was $50 per man, and defendant responded that it was. When the agent asked which of the three wanted a $50 bill the defendant indicated that it did not matter. Each of the three received $50 from the agent. Agent Malone asked the three where the tape players had come from, explaining that he wanted to avoid trying to deal it back to the same place. The defendant stated that it came from Musicland and pointed in the direction of the Jefferson Square Mall. The defendant then asked the agents about a television which he wanted to sell, to which question Agent Heavey replied that he could not pay a legitimate price for it but told the defendant to bring the television in. The defendant and his companions then left the store.

A video tape of the events which occurred in the store was played in open court. The agents testified that the tape accurately depicted the transaction. The tape was admitted into evidence and the People rested. The defendant presented no evidence in his defense.

During rebuttal argument the prosecutor stated:

"I point out that I wasn't there. He wasn't there. Unfortunately,

none of you 12 people were there to determine the evidence. We did have one advantage in that we did have the tape to see and hear part of the transaction. People that were there at the sale, Lamont Evans, John Malone, Thomas Heavey. They were there. You heard Thomas assertions, his defense, not supported by any witnesses, any evidence."

Defense counsel's objection to the prosecutor's statements was overruled. The State's Attorney then continued, "Thank you. It is not supporting. He brings us no proof, no witnesses to show what he is saying."

After being instructed on the law, the jury returned a verdict finding the defendant guilty of the offense of theft of property having a value in excess of $150. As a result, the defendant was sentenced to a term of imprisonment of 3 years, and from this conviction the defendant appealed.

The first issue raised by the defendant is whether the trial court erred in refusing to suppress the video tapes. The defendant complains that the laxity on the part of the police in obtaining review undermined the purpose of the review provision. The applicable statute reads, in pertinent part:

"Immediately after the expiration of the period of the order or extension * * * all such records shall be made available to the judge issuing the order * * *.

The judge shall listen to the tapes, determine if the conversations thereon are within his order * * *, and make a record of such determination to be retained with the tapes." Ill. Rev. Stat. 1977, ch. 38, par. 108A—7(b).

The State implies that this issue has been waived since, according to the State, the defendant's motion to suppress urged suppression on grounds other than that now advanced. However, a review of the motion to suppress established that the ground now advanced was precisely set out in the motion.

■ ■ Another contention of the State is that the ground advanced to suppress the video tape is not one of the three grounds for suppressing the contents of a recorded conversation or evidence derived therefrom. One of the legislatively enumerated grounds for suppression would exist if the conversation was unlawfully overheard and recorded. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—9(a)(1).) The use of eavesdropping devices by law enforcement officials for the purpose of obtaining evidence of criminal activity only becomes lawful when the legislatively mandated procedures for securing the authorization of the use of such devices have been fully complied with. We, therefore, agree with the argument of the defendant that a failure to comply with the required procedures, including the return provisions, renders the use of the device unlawful.

■ Had section 108A—7(b) not been complied with, we believe this would have been an appropriate ground for suppression. However, the defendant's argument on this point is without merit. In this case, all of the tapes were returned for review prior to the expiration of the final extension of the order authorizing the use of the eavesdropping devices. In this case, compliance with the review provision has been admirable.

The defendant argues that, at the end of the initial authorization and each extension, the tapes should have been returned for review. For this interpretation, the defendant cites no authority. Nor does the defendant deal with the failure of the legislature to require the authorizing judge to review tapes already made before granting an extension of the authorization order (Ill. Rev. Stat. 1977, ch. 38, par. 108A—4). An approximate reading of section 108A—7(b) in conjunction with section 108A—4, then, indicates a legislative intent to require the submission of the tapes no later than immediately following the expiration of the authorized period, the total of the original and extended periods.

Since we find no error in the trial court's refusal to suppress the video tapes, the defendant's second issue, concerning the propriety of the prosecutor's statement while arguing in rebuttal to the defendant's closing argument, must be considered. It is a violation of the fifth amendment of the United States Constitution for a prosecutor to directly comment on a defendant's failure to testify. (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229.) Furthermore, any reference or comment on the defendant's neglect to testify is proscribed by statute. (Ill. Rev. Stat. 1977, ch. 38, par. 155—1.) The standard for determining whether remarks of a prosecutor violate the defendant's right to remain silent is whether "the reference [was] intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of the legal right to testify." *Watt v. People* (1888), 126 Ill. 9, 32, 18 N.E. 340, 350. Accord, *People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697; *People v. Johnson* (1976), 35 Ill. App. 3d 666, 341 N.E.2d 443.

■■ ■ For the prosecutor, after naming three persons, including the defendant, who were present at the time of the incident, to emphasize that the other two had testified and then to assert that the defense is not supported by any witnesses or evidence is, we believe, improper argument since such statements necessarily draw the attention of the jury to the failure of the defendant to testify and must have been intended to do so. (See *People v. Lyons* (1976), 44 Ill. App. 3d 802, 358 N.E.2d 1183.) Nevertheless, it is argued by the State that the error of the trial court in overruling the defense objection to these statements is harmless. For an error of Federal constitutional magnitude to be declared harmless, the reviewing court must determine that the error was harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

In this case, the evidence against the defendant is overwhelming and unrebutted. We believe, therefore, that the failure to sustain the defendant's objection to the prosecutor's improper comment was harmless beyond a reasonable doubt.

Accordingly, the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.