THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DANIEL JOHNSON, Defendant-Appellant.

Third District No. 81-332

Opinion filed June 28, 1982.—Rehearing denied July 29, 1982.

STOUDER, J., dissenting.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE ALLOY delivered the opinion of the court:

The State filed a complaint in the circuit court of Rock Island County charging the defendant, Daniel Johnson, with attempted rape and deviate sexual assault. It alleged that on September 3, 1980, the defendant shoved Sharon Fundell to the ground, ripped her clothes, and attempted to have sexual intercourse without her consent. He then forced her to perform an act of oral sex. Following a jury trial, the defendant was found guilty of attempted rape and acquitted of deviate sexual assault. The court later sentenced the defendant to a five-year term of imprisonment. Although the defendant presents several issues for review, the most significant issue is whether the admission of other crimes evidence was reversible error.

On September 3, 1980, Sharon Fundell walked to an 11 a.m. appointment in Rock Island. A young man riding a bicycle approached her from the rear and touched her buttocks as he passed. He rode to the street corner and returned, asking her questions. Fundell replied, but kept walking along Second Avenue as the man walked his bicycle along with her. As she approached her destination, the man placed his hands on one of her breasts and took one of her hands and placed it on his crotch. Each time Fundell shoved his hands away and said, "No." Suddenly, as they approached the building to which Fundell was going, the man lifted her into the air and threw her to the ground near some bushes, pinning her down by lying on top of her. Fundell was frightened but she did not scream, thinking it best to try to convince her assailant to release her. The man ripped her dress and pantyhose and attempted to insert his penis into her vagina, but could not because he failed to get an erection. The man then stood, subdued Fundell as she attempted to escape, and forced her to perform oral sex.

After five minutes, Fundell said she was going to signal an approach-

ing car for help. She could not, but the attacker then released her when he thought he heard someone approaching. Fundell went inside the building and called the police. On October 21, 1980, she identified the defendant as her assailant from a group of six or seven photographs. The defendant's photograph, from which Fundell made her out-of-court identification, was taken one day earlier following the defendant's arrest for two other attacks. She also identified the defendant in court as the man who had attacked her.

The prosecution then introduced, over the defendant's objection, testimony of two other women who claimed to be victims of the defendant's attacks, for the purpose of reinforcing Fundell's identification of the defendant as her assailant. The prosecution argued that such testimony was relevant for establishing the defendant's *modus operandi* which in turn circumstantially showed that the defendant had committed the crimes charged.

On September 18, 1980, at 2 p.m., Judith Harland and her mother were walking along Eighth Avenue in Rock Island. A young man walked past them and said, "Hi." Harland and her mother said nothing and kept walking. As Harland reached the corner, she turned back and saw the man approaching. She continued walking, but the man grabbed her buttocks then reached around her neck. He threw Harland to the ground, tore her blouse, and tried to unsnap her pants before he fled. She reported the attack to the police and gave a description of her assailant that matched Fundell's description of her assailant.

On October 20, 1980, at 1 p.m., Virginia Holmquist was attacked by a young man on Tenth Avenue in Rock Island. He first walked past her and said, "Hey, baby." She told him to leave her alone and continued walking. She sensed someone was behind her, so she turned and saw the young man following her. She became frightened and criss-crossed several streets. She believed that she had lost the man when, suddenly, he turned her around, said he did not like "bitches" who refused to talk to him, and struck her face. When Holmquist screamed, some people appeared and the man fled. The defendant was arrested later that day and was identified by Harland and Holmquist as their assailant at a station house showup.

The defendant did not testify and presented virtually no evidence. He now appeals his conviction and sentence, alleging several errors in the trial court.

The first issue is whether the trial court erred in admitting evidence of other crimes. Although the courts disapprove of evidence concerning extra-indictment offenses, this evidence is admissible to show motive, intent, knowledge or *modus operandi*. (*People v. McDonald* (1975), 62 Ill.

2d 448, 343 N.E.2d 489.) In this case, the trial court properly admitted evidence of other crimes to show a common scheme or *modus operandi*.

■■ Evidence of other crimes is admissible to show *modus operandi* when the evidence establishes "a scheme or design which was strikingly similar to the offense charged in the indictment." (*People v. Tranowski* (1960), 20 Ill. 2d 11, 16, 169 N.E.2d 347, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290. See also *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) The other crimes do not have to be identical in every minute detail. The similarity need only be striking or distinctive.

In *People v. Sievers* (1978), 56 Ill. App. 3d 880, 372 N.E.2d 705, the court upheld the use of evidence of extra-indictment offenses when a defendant was convicted of armed robbery and rape. In *Sievers*, the State produced evidence that a man corresponding to the defendant's description attacked four other women. In each attack, as in the one charged here, the man approached his victims on foot while walking down a sidewalk and began the assault by fondling or attempting to fondle the victim. Three of the attacks occurred on a Sunday morning and the attacker used a knife, as was true in the offense charged. Additionally, the defendant preceded the attacks with an armed robbery and the attacker announced his sexual intentions, as was also true in the offense for which he was on trial. Furthermore, these attacks occurred within a two-week time span.

Similarly, in *McDonald*, our supreme court upheld admission of evidence of other crimes when both the extra-indictment offense and the crime for which the defendant was charged occurred in the early morning hours, the attacker gained entrance to both homes in a similar fashion, the method or attack on each victim was similar and the attacker wore the same attire in each instance. The court ruled that the similarity in *modus operandi* was sufficient enough to admit the evidence of another crime. See also *People v. Therriault* (1976), 42 Ill. App. 3d 876, 356 N.E.2d 999.

■■ In the case at bar, *Sievers* and *McDonald* provide ample support for the admission of Harland's and Holmquist's testimony. The attacks occurred within a nine-week time span. All three attacks occurred in the daylight. All three victims are white and each was walking on a sidewalk at the time of the initial contact with the defendant. In each case, the defendant first tried to initiate a conversation with the victim. In the case before us and in the attack on Harland, the attacker started his assault by fondling the victims. In all three attacks, the victims gave police substantially identical physical descriptions.

*People v. Tate* (1981), 87 Ill. 2d 134, 429 N.E.2d 470, relied upon by defendant, does not require a contrary result. Not only does *Tate* reiterate the law on this subject, that decision reaffirms the validity of *McDonald*.

The circumstances of *McDonald* and the case at bar are closely parallel, and the "degree of uniqueness" here is no weaker than that found in *McDonald*. The trial court, therefore, did not err when it admitted evidence of extra-indictment offenses.

The next issue is whether the trial court held an adequate hearing to rule on defense motions to suppress Harland's and Holmquist's identification. Harland and Holmquist viewed the defendant during a one-man showup procedure—after police asked these witnesses to come to the police station to identify their attacker. The defendant moved to suppress these identifications at the close of Harland's testimony. He contends the trial court did not hold an adequate hearing when it denied the motions to suppress. The defendant bases his appeal of this issue on two points: First, that the court failed to require the State to meet its burden of proof. In essence, the defendant is arguing the State failed to meet its burden. Second, the hearing was inadequate because the trial court failed to make findings of fact and conclusions of law. The defendant relies upon section 114—12(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—12(e)) to support his argument.

■■ The defendant incorrectly argues that the State failed to meet its burden of proof. Both witnesses viewed the defendant in close proximity and in daylight. Although the witnesses did not say how long they viewed their attacker, the recitation of their attacks demonstrates ample opportunities for both of them to view the defendant. Their identification of the defendant—at the showup as well as at the trial—were positive and unwavering. The fact that neither stated precisely how many minutes they saw the defendant is unimportant. The trial court could properly find an independent basis for the in-court identifications. Furthermore, the trial court need not make findings of fact and conclusions of law where the underlying search or seizure is lawful. (*People v. Dickerson* (1979), 69 Ill. App. 3d 825, 829-30, 387 N.E.2d 806.) The defendant here does not contend his arrest was unlawful. Therefore, the trial court properly denied the motion to suppress the identifications.

The next issue is whether the prosecutor's closing and rebuttal comments operated to deny the defendant a fair trial. The comments at issue repeatedly refer to the "uncontradicted" nature of the State's case. The defendant claims these remarks amounted to a comment on his decision not to testify, thus prejudicing his defense.

■■ ■ It is improper to comment upon a defendant's failure to testify. (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229.) Although the State may argue that its evidence is uncontradicted and unrebutted—even when the only person who could refute it is the defendant—courts have not tolerated such arguments when they are calculated to draw attention to the defendant's silence. (*People v. Johnson* (1981), 102 Ill. App. 3d 122, 429 N.E.2d 905.) Although the defendant's

failure to object to these improper comments could be construed as a waiver of objection, we note that they were harmless beyond a reasonable doubt. The victim's testimony of the events surrounding the attack was unequivocal, and the identification testimonies of the prosecutrix, Holmquist and Harland, were positive and emphatic. The evidence is overwhelming and unrebutted. On these facts, the error charged was harmless beyond a reasonable doubt. *People v. Evans* (1979), 78 Ill. App. 3d 996, 398 N.E.2d 326.

● 6 Finally, the defendant appeals his five-year sentence for the conviction of attempted rape. The trial court listed the threat of serious harm to the victim as a factor in aggravation of sentencing under section 5—5—3.2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)). The defendant contends that the use of force in an attempted rape implicitly carries a threat of serious harm to the victim. The defendant argues, therefore, the legislature already considered this factor when it determined a sentence for attempted rape and the court may not now consider this fact again. The defendant relies upon the reasoning of *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, in which our supreme court ruled that obtaining money as a result of a burglary was not "receiving compensation" for the offense within the meaning of section 5—5—3.2(a). Obtaining the proceeds of a burglary is implicit in the offense itself, and could not be used as a factor in aggravation. Relying upon *People v. Allen* (1981), 97 Ill. App. 3d 38, 422 N.E.2d 254, the defendant argues that aggravating factors exist only when the risk of harm is greater than that inherent in the offense. 97 Ill. App. 3d 38, 40.

The defendant's analogy of *Conover* and *Allen* to this case is faulty. The fact that a crime has an element of force in it does not necessarily mean that serious harm or the threat of serious harm is inherent in the offense. (See, *e.g., People v. Carmack* (1982), 103 Ill. App. 3d 1027, 432 N.E.2d 282 (threat of serious harm not necessarily implicit in offense of armed robbery).) Similarly, the threat of serious harm is not inherent in the offense of rape. There are wide variances in the risk of harm to victims of sexual attacks. The rapist who uses a deadly weapon in his attack, for example, is usually a much greater threat to his victims than an unarmed rapist who overcomes his victims by fear or intimidation. It is illogical to argue that the legislature intended to prevent a trial court from recognizing these differences and from imposing sentences accordingly. The trial court here properly considered the threat of serious harm as an aggravating factor and imposed a sentence of imprisonment that is supported by the record.

The judgment of the circuit court of Rock Island County is affirmed.

BARRY, P. J., concurs.

JUSTICE STOUDER, dissenting:

I respectfully dissent from the result reached by my colleagues. I believe the circuit court erred when it admitted evidence of other crimes as his *modus operandi* to circumstantially establish the defendant's identity. Today's ruling shows that the exceptions to the rule have all but eliminated the rule itself.

The criminal law strongly disfavors receiving proof of the accused's bad character, including evidence of unrelated crimes, to demonstrate his guilt circumstantially by suggesting that he conformed to his established propensities. Other-crimes evidence is barred not because it is not factually relevant, but because it tends to over-persuade the jury to the obvious and substantial prejudice of the accused. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) Our law "simply distrusts permitting the trier of fact to draw the inference that because a man has committed other crimes he is more likely to have committed the current crime." (E. Cleary and M. Graham, Handbook of Illinois Evidence sec. 404.5, at 134 (3d ed. 1979).) Nevertheless, other-crimes evidence may be admitted where it is substantially relevant for some other purpose than to show a probability that the accused committed the crime charged because he has a criminal character. (*People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506.) One such independent basis for admitting other-crimes evidence is to establish the accused's *modus operandi* or common scheme. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) The justification for admitting this evidence is that, if the criminal conduct charged coincided with the accused's established criminal tradecraft, then the accused is likely to have committed the current crime.

To constitute admissible evidence of the defendant's *modus operandi*, the other crimes must not only parallel the crime charged, but they also must carry some degree of uniqueness so as to separate or distinguish the accused from the general criminal population. This is done by showing that the crimes being compared exhibit the accused's criminal trademark. The requirement of uniqueness is particularly crucial, for without it other-crimes evidence only demonstrates the defendant's criminal propensities and bad character, and thus is not legally relevant. The question presented here is how unique must the evidence be before it becomes admissible as *modus operandi*. Our supreme court said in *People v. Lehman* (1955), 5 Ill. 2d 337, 343, 125 N.E.2d 506, 509, that evidence of *modus operandi* must have "peculiar and distinctive features" to be admissible. More recently, the court has said: "Although the similarities need not be unique only to the two offenses being compared, there must be present some distinctive features that are not common to most offenses of that type in order to demonstrate *modus operandi*." (*People v. Tate* (1981), 87 Ill. 2d 134, 142-43, 429 N.E.2d 470, 475. See also McCormick, Evidence sec 190,

at 449 (2d ed. 1972) (other-crimes evidence "must be so unusual and distinctive as to be like a signature").) The majority, while at least acknowledging the need for uniqueness, requires none in finding that the evidence of the attacks on Harland and Holmquist was probative *modus operandi* evidence. The sum of the similarities among the three attacks was that a male, generally fitting the description of the defendant, attacked three white women, who were walking along different Rock Island sidewalks, during a six-week period. In each case the assailant attempted to initiate a conversation with the victim prior to striking. Not only are there no more similarities, but also the similarities that do exist are not themselves entirely consistent. For example in Fundell's attack, the assailant approached on a bicycle, whereas the assailant who attacked Harland and Holmquist was on foot. Also, although the assailant preceded each attack with an attempt to strike up conversation with the victim, he used no unique or even similar approach. Finally, the nature of the attacks was not consistent throughout because, while the assailant clearly fondled Fundell, the record is not clear as to whether the assailant fondled Harland and clearly shows that Holmquist was not fondled by her assailant.

These similarities are nothing more than standard criminal techniques, or generic similarities that are common to most, if not all, sexual assaults. Indeed the similarities that the majority finds so convincingly distinctive here are also found at least in part in another sexual attack case upon which they relied, *People v. Sievers* (1978), 56 Ill. App. 3d 880, 372 N.E.2d 705. Certainly the similarities here are no more distinctive than in *People v. Tate* (1981), 87 Ill. 2d 134, 429 N.E.2d 470. There the indicted crime and the compared crime were practically identical in every respect: in both a man slipped several packages of sausages under his coat and attempted to walk out of two Kankakee foodstores without being noticed. The supreme court ruled that the evidence was inadmissible as *modus operandi* on the ground that it lacked sufficient uniqueness. The court termed the so-called *modus operandi* as standard criminal technique and said that while the distinctiveness need not be so conclusive so as to eliminate all other offenses of the same type, the evidence must establish the accused's criminal trademark which will exclude most like offenses. Applying this standard to the case before us, I can discern no distinctiveness in the proffered other-crimes evidence which sets this defendant apart from others committing the same criminal conduct.