THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUNG OH KIM, Defendant-Appellant.

First District (1st Division)   No. 85—1157

Opinion filed September 29, 1986.

Elizabeth Clarke, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter D. Fischer, and Michael D. Krejci, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Following a jury trial, Jung Oh Kim was convicted of rape, armed robbery, aggravated battery and unlawful restraint. He was sentenced to concurrent terms of 11 years for rape and armed robbery, 5 years for aggravated battery and 3 years for unlawful restraint.

Defendant appeals, contending: (1) he was denied a fair trial because of repeated instances of prosecutorial misconduct; (2) the sentences of 11 years for rape and armed robbery were excessive; and (3) his conviction for unlawful restraint should be vacated as it violates the one-act, one-crime rule.

We affirm in part and vacate in part.

At about 3:45 p.m. on November 15, 1983, police officers responded to a call from 7201 North Lincoln in Lincolnwood. When they arrived at the scene they found the victim and Yun Chon, the daughter of the victim's employer. The victim had been tied up with telephone cord and raped, and $6,000 and various items of jewelry had been taken from the house.

The victim testified that she had come to the United States from Korea in 1982. She worked as a housekeeper for Mrs. Jeong Chon and was caring for Mrs. Chon's daughters while her employer was in Japan. The victim further testified that she knew the defendant, Jung Oh Kim, as he had visited the apartment many times with Mrs. Chon's son. On the day of the alleged rape, defendant gained entry to the apartment by telling the victim that he had brought over some money that he owed Mrs. Chon. She let him into the apartment and continued with her work. Defendant asked her where the rest of the family was and she told him that the children were at school and no one else was at home. She then noticed that he had removed his jacket and was wearing gloves.

The victim stated that the defendant then told her that he had a knife and that if she moved he would kill her. He proceeded to tie her wrists behind her back with a telephone cord, then removed her skirt and ripped off her underwear with a knife. He dragged her into one of the children's bedrooms, pushed her down on the bed, covered her face with a blanket and raped her with her hands still tied behind her back. He then demanded that she get all the money in the house. After searching several rooms in the apartment, defendant found some jewelry and about $6,000 that had been hidden in a passport. After again threatening to kill her if she identified him, defendant left the victim tied up on the living-room floor.

Yun Chon testified that she was the daughter of the victim's employer. She stated that on November 15, 1983, she arrived home from

school around 3:30 p.m. and found the victim tied up. The victim told her that Jung Oh Kim "took everything." Yun Chon untied the victim, checked the apartment and called the police. When the police arrived, Yun Chon interpreted for the victim, who did not speak English. The victim asked her not to tell the police that she had been raped. The police found out later that she had been raped and took her to the Skokie Valley Hospital. Yun Chon also testified that about $6,000 and some jewelry were missing.

Teresa Sinkowski testified that she was a registered nurse and treated the victim in the Skokie Valley Hospital on November 15, 1983. She treated the victim for abrasions and noticed black and blue marks around her neck. She also received specimens from the doctor which had been taken from the victim and labeled them for the Vitullo kit.

Mohammed A. Tahir testified that he worked for the Department of Law Enforcement as a forensic scientist in the area of serology. According to Tahir, only 11% of the population secrete blood type B, the blood type of defendant. He testified that the specimens taken from complainant could have originated from defendant.

Eric Berg-Olsen testified that he was employed by the Lincolnwood police department. On November 15, 1983, he went to 7201 Lincoln Avenue in Lincolnwood and interviewed the victim with Yun Chon acting as interpreter. At the time, he was given defendant's name and description.

Defendant presented an alibi defense. He testified that he had known complainant since July of 1983 and that he had had a previous sexual relationship with her. He stated that on November 15, 1983, he did not leave his home. He testified that although he knew police were looking for him, he did not go to the police station until November 18 because he was trying to locate an interpreter.

Defendant's parents and his sister testified that he was at home watching Korean videos on television until 4 p.m. on the day that the rape and robbery occurred. His sister also testified that the police came to their house at 7 p.m. the following night looking for defendant. She told them he was not home when in fact he was home at the time the police were there.

At the conclusion of the trial, the jury found defendant guilty of rape, armed robbery, aggravated battery and unlawful restraint.

■ Defendant first contends that he was denied a fair trial because the prosecutor pursued certain prejudicial lines of questioning after they were ruled inadmissible by the trial court.

The first line of questioning concerned whether being raped would

cause shame to a Korean woman and result in her husband divorcing her. The State questioned both the victim and defendant on the issue and made one reference in closing argument to "repercussions" in the victim's life as a result of the rape. In every instance, defendant's counsel objected and objections were sustained.

The main thrust of defendant's argument is that this line of questioning and the reference to "repercussions" during closing argument constitute reversible error because it improperly arouses sympathy for the victim in the minds of the jury, citing *People v. Speck* (1968), 41 Ill. 2d 177, 202, 242 N.E.2d 208, *death sentence reversed and cause remanded* (1971), 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279. The State maintains that these questions were relevant both on the issue of why the victim did not initially report the rape to police and to impeach defendant's testimony that he had had a previous affair with the victim.

Defendant correctly states that it is error to present testimony solely to arouse the sympathies and passions of the jury where the testimony is unrelated to the guilt or innocence of the accused. (*People v. Starks* (1983), 116 Ill. App. 3d 384, 389, 451 N.E.2d 1298, *appeal denied* (1983), 96 Ill. 2d 548.) In order to constitute reversible error, however, the testimony and argument on which it is based must cause actual prejudice to the defendant. (*People v. Starks* (1983), 116 Ill. App. 3d 384, 390, 451 N.E.2d 1298, *appeal denied* (1983), 96 Ill. 2d 548.) Although questions regarding the marital status of the victim subsequent to the rape were unnecessarily repetitive and not relevant to the issue of defendant's guilt or innocence, defense counsel promptly objected and the objections were sustained. We believe they were not sufficiently prejudicial to warrant reversal.

Defendant also argues that reversal is mandated where the prosecution persistently pursues a line of questioning over defense objections which have been sustained, citing *People v. Weinger* (1981), 101 Ill. App. 3d 857, 428 N.E.2d 924. The court in *Weinger*, however, based its reversal on the cumulative impact of a record reflecting 35 instances of prosecutorial misconduct, including the repetition of questions intended to make it appear that defense counsel was withholding damaging evidence from the jury. *People v. Weinger* (1981), 101 Ill. App. 3d 857, 871, 428 N.E.2d 924.

■ On the record before us, it appears that the error alleged was not significant considering the strength of the State's case. (See *People v. Johnson* (1976), 43 Ill. App. 3d 649, 659, 357 N.E.2d 151.) The jury heard evidence that the victim immediately identified defendant as the perpetrator of the attack. There was also corroborating medi-

cal testimony regarding victim's condition, and defendant's blood type B, found in only 11% of the population, was present in the semen taken from the victim. On these facts, it does not appear that the jury's verdict would have been different had the prosecutor not pursued this line of questioning. *People v. Hunter* (1984), 124 Ill. App. 3d 516, 541, 464 N.E.2d 659, *appeal denied* (1985), 106 Ill. 2d 557; *People v. Vanda* (1982), 111 Ill. App. 3d 551, 571, 444 N.E.2d 609, *cert. denied* (1983), 464 U.S. 841, 78 L. Ed. 2d 130, 104 S. Ct. 136.

Furthermore, the jury was instructed to listen only to the evidence presented at trial and to disregard any questions to which objections were sustained. (*People v. Faysom* (1985), 131 Ill. App. 3d 517, 525, 475 N.E.2d 945; *People v. Rowe* (1983), 115 Ill. App. 3d 322, 328, 450 N.E.2d 804, *affirmed* (1984), 103 Ill. 2d 192.) We conclude that any prejudice caused by this line of questioning was sufficiently cured by the trial court's cautionary instruction. See *People v. Johnson* (1984), 122 Ill. App. 3d 532, 538, 461 N.E.2d 585.

■ The second line of questions objected to was a series of questions in which the prosecutor referred to the process or warrant for defendant's arrest. Defendant claims that these repeated references following rulings by the court that such testimony was inadmissible constituted such blatant disregard for the court's authority as to require reversal.

The State claims that it pursued the line of questioning in response to defendant's alibi that he had been home throughout the day on which the crime occurred. The State argued that the questions were asked in order to impeach the credibility of several members of defendant's family by showing that they knew that police were looking for defendant for three days but failed to report his whereabouts.

Although it was disrespectful to the court and needlessly argumentative for the prosecutor to pursue this line of questions despite the court's ruling, we do not believe that defendant was denied a fair trial thereby. (See *People v. Whitlow* (1982), 89 Ill. 2d 322, 341, 433 N.E.2d 629, *cert denied* (1982), 459 U.S. 830, 74 L. Ed. 2d 68, 103 S. Ct. 68.) Any prejudice to defendant was cured by the trial court's sustaining of defense objections. *People v. Hunter* (1984), 124 Ill. App. 3d 516, 549, 464 N.E.2d 659, *appeal denied* (1985), 106 Ill. 2d 557.

Defendant's final contention in this regard is that the cumulative effect of these two lines of questioning when considered with other comments ruled inadmissible by the trial court prejudiced his right to a fair trial. (See *People v. Whitlow* (1982), 89 Ill. 2d 322, 341, 433 N.E.2d 629, *cert. denied* (1982), 459 U.S. 830, 74 L. Ed. 2d 68, 103 S. Ct. 68; *People v. Starks* (1983), 116 Ill. App. 3d 384, 395-96, 451

N.E.2d 1298, *appeal denied* (1983), 96 Ill. 2d 548.) After reviewing the record, we do not believe that the other allegations of prosecutorial misconduct prejudiced defendant at trial. Although we are not persuaded that the prosecutor's intention in pursuing certain matters was solely to explain, qualify or rebut the testimony that preceded them, we do not believe that these statements were material factors in defendant's conviction.

■ We also reject defendant's contention that various comments made during closing argument were so inflammatory or prejudicial that they denied defendant a fair trial. In closing, the State made some insinuations and remarks that were objected to. However, a careful reading of these remarks in light of the entire record does not show that they warrant reversal. A prosecutor is permitted substantial latitude in closing argument (*People v. Patterson* (1986), 140 Ill. App. 3d 421, 428, 488 N.E.2d 1283; *People v. Hine* (1980), 88 Ill. App. 3d 671, 679, 410 N.E.2d 1017), and even improper remarks will not result in reversal of a conviction unless they represent a material factor in defendant's conviction (*People v. Hoddenbach* (1983), 116 Ill. App. 3d 57, 62, 452 N.E.2d 32). The record shows that the trial court instructed the jury that they were to listen only to the evidence and to disregard any statements that were not based on the evidence. We believe that the court's instructions cured any prejudice that may have resulted from remarks objected to by defense counsel and that the comments complained of do not warrant reversal. *People v. Olesch* (1986), 143 Ill. App. 3d 577, 588, 492 N.E.2d 1381; *People v. Johnson* (1984), 122 Ill. App. 3d 532, 538, 461 N.E.2d 585.

■ Defendant next contends that the concurrent sentences of 11 years for rape and armed robbery are excessive and that in determining the sentence the court gave too much weight to factors in aggravation without properly considering factors in mitigation. We disagree.

In imposing sentence the trial court is vested with wide discretion to determine a punishment appropriate to the particular circumstances presented by the case. (*People v. Reese* (1984), 121 Ill. App. 3d 977, 990, 460 N.E.2d 446.) As our supreme court has repeatedly emphasized:

"[A] reviewing court should not substitute its judgment or preference as to punishment for that of the sentencing court. The trial court is ordinarily best situated to tailor a sentence or other disposition to the needs of the case. It balances the appropriate factors in imposing sentence, and the exercise of this discretion should not be altered upon review absent abuse of

that discretion." *People v. Steppan* (1985), 105 Ill. 2d 310, 323, 473 N.E.2d 1300, citing *People v. Hicks* (1984), 101 Ill. 2d 366, 375, 462 N.E.2d 473.

In the instant case, defendant was found guilty of two Class X felonies as well as aggravated battery and unlawful restraint. The trial court was faced with the task of considering defendant's potential for rehabilitation as well as fashioning a sentence that would protect the interests of society. *People v. Perruquet* (1977), 68 Ill. 2d 149, 155, 368 N.E.2d 882.

■ At the sentencing hearing the court heard ample evidence in mitigation as to defendant's youth, his lack of a prior police record, his work record and his reputation in the local community. In imposing sentence the court stated in mitigation that the defendant had no prior history of delinquency or criminal activity. The fact that the court did not refer to other mitigating factors in imposing sentence does not allow us to assume that it ignored them. (*People v. Gornick* (1982), 107 Ill. App. 3d 505, 514, 437 N.E.2d 892.) While the trial judge is required to set forth his reasons in the record for imposing a particular sentence, he is not required to recite and assign value to each fact presented in evidence at the sentencing hearing. *People v. Meeks* (1980), 81 Ill. 2d 524, 534, 411 N.E.2d 9; *People v. Davis* (1984), 124 Ill. App. 3d 813, 823, 464 N.E.2d 1150.

■ Defendant argues that the trial court improperly relied on the use of a knife and threats against complainant as the sole aggravating factor in determining the sentence. Defendant contends that since one of the elements of rape is the use of force (Ill. Rev. Stat. 1983, ch. 38, par. 11—1), use of the knife was merely an element of the crime and not an aggravating factor.

Although the use of force is an element of the crime, there is no absolute standard setting the amount of force required to establish a rape. (*People v. Sims* (1972), 5 Ill. App. 3d 727, 729, 283 N.E.2d 906.) In the instant case there was substantial evidence of the use of force beyond the amount necessary to establish rape, and it was within the discretion of the trial judge to find that use of a knife was a factor in aggravation. (*People v. Johnson* (1982), 107 Ill. App. 3d 156, 161, 437 N.E.2d 436, *appeal denied* (1982), 92 Ill. 2d 570.) Furthermore, the court did not rely solely on the offense itself as defendant suggests. The court stated that "it was a very brutal crime *** and that the victim was abused, demeaned, defiled, humiliated" and that defendant threatened to kill her if she reported him to the police. The court also noted that the crime had been premeditated. We believe that these constitute sufficient aggravating factors to justify the court's sentenc-

ing defendant to more than the statutory minimum sentence of six years.

■■ Defendant's final contention is that his conviction for unlawful restraint must be vacated as judgments for both rape and unlawful restraint violate the one-act, one-crime rule set forth in *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273. We agree and accordingly vacate the concurrent sentence of three years for unlawful restraint.

In similar cases, reviewing courts have reversed convictions for unlawful restraint where the lower court had entered convictions for both rape and unlawful restraint. *People v. Wrice* (1986), 140 Ill. App. 3d 494, 488 N.E.2d 1313; *People v. Bachman* (1981), 92 Ill. App. 3d 419, 414 N.E.2d 1369, *appeal denied* (1981), 85 Ill. 2d 558; *People v. Coleman* (1980), 83 Ill. App. 3d 429, 403 N.E.2d 1266; *People v. McCann* (1979), 76 Ill. App. 3d 184, 394 N.E.2d 1055.

This court has also reversed a conviction for unlawful restraint where the conduct constituting the unlawful restraint was separate and distinct in both time and distance from the conduct which constituted the rape. (*People v. Jones* (1983), 114 Ill. App. 3d 576, 449 N.E.2d 547.) Thus even the short time lapse that occurred between the restraint and the subsequent rape fails to remove the offense from the one-act, one-crime rule. Accordingly, defendant's conviction for unlawful restraint is vacated.

Pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 175-76, 374 N.E.2d 194, and relevant statutory provisions (Ill. Rev. Stat. 1985, ch. 110, par. 5—101 *et seq.*; ch. 53, par. 8; and ch. 38, pars. 110—7, 180—3), we assess defendant $50 in costs for the State's defense of the instant appeal and hereby incorporate it as part of this judgment. We also assess defendant an additional $25 fee for the cost of oral argument. See *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319.

For the foregoing reasons, the judgments entered by the circuit court of Cook County for rape, armed robbery and aggravated battery are affirmed; the judgment for unlawful restraint is vacated.

Affirmed in part and vacated in part.

CAMPBELL and BUCKLEY, JJ., concur.