THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES GORNICK, Defendant-Appellant.

First District (2nd Division)    No. 80-381

Opinion filed June 22, 1982.

Ralph Ruebner and Bradley S. Bridge, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and Raymond Brogan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant was convicted by a jury for the armed robbery of a Certified Grocery store on January 24, 1976, in Oak Park, and was sentenced to 30 years in the Illinois Department of Corrections to be served concurrently with another sentence imposed in connection with a River Forest armed robbery committed on June 15, 1976. This is an appeal from the Oak Park robbery conviction.

This appeal presents issues related to asserted trial errors, sentencing errors and errors relating to substitution of the judge and appointment of counsel.

For the reasons which follow, we affirm.

At trial evidence was adduced which revealed that Shelly Dunlap, a cashier at the Certified Grocery, at 5:45 p.m. on January 24, 1976, was asked by defendant to put the money in his grocery bag. Defendant opened his jacket; she saw a gun sticking out of his pants, and gave him all the paper money in her register. Defendant was sloppily wearing a light brown wig and had "very distinguishable blue eyes." Her employer, John Vlahos, followed defendant out of the store. She identified defendant in a lineup on June 17, 1976. She also made an in-court identification of defendant at trial. The time lapse from the moment defendant spoke with her until he left was 2 or 3 minutes. Her attention was not "totally devoted" to defendant. The actual robbery itself took 30 seconds or less.

Vlahos, the owner and manager of Certified Grocery, testified that

he was working the second register, next to Dunlap, and noticed a robbery "going on." He saw defendant from a distance of 6 to 10 feet, under normal lighting conditions. He observed a gun about defendant's person and saw Dunlap give defendant money. He followed defendant outside the store and heard a gunshot. At 6:30 or 7 p.m., the police brought him a person to identify whose appearance was completely different than the perpetrator of the crime, from the standpoint of his hair and jacket. On June 17, 1976, at a lineup, he identified defendant as the offender. He also identified defendant in court at trial. On cross-examination, Vlahos stated he could not tell whether defendant had on a wig or not. Defendant had "bright" eyes but he could not tell their color.

Officer Charles Schauer's testimony with respect to the circumstances surrounding defendant's lineup shortly after the incident was substantially consistent with Vlahos'. Schauer stopped defendant, searched his car but found no weapon, money or groceries.

On November 9, 1976, a hearing was held on defendant's motion to quash and suppress before Judge Francis Mahon. At that hearing, defendant was represented by assistant public defenders Gerald Winiecki and Gary Stanton. James Maher, a River Forest policeman, testified he had presented a complaint and warrant to Judge Mahon at his home, stating that: defendant's picture was identified as the person who committed the River Forest offense by a witness; defendant admitted being in the area at the time; defendant fit the physical description; and his car was seen in the area at the time. Judge Mahon issued the warrant. Maher and several other officers arrested defendant in his home. At approximately 10 p.m. on June 15, 1976, he was placed in a lineup. Two witnesses failed to identify him. He was held in jail overnight in River Forest. At 10:30 a.m. the next day, defendant contacted his attorney, Jack Dempsey. The record is silent as to whether Dempsey ever appeared at the police station. Defendant's request to have his attorney present prior to any further lineups was denied. In a second lineup, held at 1 p.m. that day, in which everyone was wearing wigs, defendant was identified by two witnesses from the River Forest incident, and thereafter two witnesses to the Oak Park robbery identified him as the perpetrator of the Oak Park robbery. The court denied the motion to quash arrest and suppress the River Forest identification. A motion to quash the Oak Park identification was continued.

On November 17, 1976, defendant moved to remove Stanton and Winiecki as counsel, in part, because they were "frauds." At a subsequent proceeding, although the court found these attorneys "very competent lawyers," it appointed new counsel, assistant public defender Daniel Radakovich, and denied defendant's motion for a Chicago Bar Association attorney. The court granted defendant leave to file a pro se motion to

quash arrest and suppress evidence and to suppress identification in both the River Forest and Oak Park cases if he could bring in new evidence beyond that presented at the November 9 hearing.

On January 13, 1977, defendant informed the court that he had obtained private counsel, Albert Armonda, who represented him at the next hearing, "because of the operating click [sic] that they have in Oak Park between the prosecuting attorney and the public defender." On June 26, 1978, Armonda's motion to withdraw as counsel for defendant was granted and assistant public defender, Marijane Placek, was appointed as defendant's counsel. On December 8, 1978, Placek withdrew from the case pursuant to defendant's motion for a bar association attorney. Defendant asserted he "went through five of them" and none were "satisfactory" to him. On February 20, 1979, the trial court, Judge Anthony Bosco, presiding, denied defendant's motion for a bar association attorney and reappointed Winiecki to the case unless and until defendant obtained a private attorney.

On April 20, 1979, defendant again stated that he "went through" five public defenders; and, that there has been a "conspiracy" to put him away. Defendant requested that "Winiecki who knows the case so well take it." At a subsequent proceeding, Winiecki made a motion to withdraw, stating that there was a potential conflict. Upon defendant's request that Winiecki withdraw, the court granted the motion. Again defendant stated that he wanted a bar association attorney. On May 16, 1979, the court granted defendant's request and appointed an attorney from the Chicago Bar Association, Charles Schwartz. The court informed Schwartz that it "will be pushing for trial. It's an old case." At the next hearing, defendant stated he didn't "accept" Schwartz and accused Schwartz of "lying." The court informed defendant that he would appoint no further lawyers and that defendant would be representing himself pro se if Schwartz withdrew. On July 30, 1979, defendant made a pro se motion to appoint new counsel and to substitute judges. The court stated that defendant's motion for a substitution of judges would be entertained if it is "under the right section," advising him that if he did not know the section, he should file his motion through his lawyer. Defendant requested that his counsel be charged with perjury and fraud. No hearing was held on these charges.

On August 3, 1979, defendant filed a petition for leave to file in the United States District Court for the Northern District of Illinois a section 1983 suit (42 U.S.C. sec. 1983 (1970)) in *forma pauperis* against, *inter alia*, Schwartz and Bosco, charging them with corruption, conspiracy, official misconduct, obstruction of justice, perjury, defrauding the State and intentionally conspiring to violate his civil and constitutional rights. That petition was denied by the District Court on August 22, 1979. Appeals

from that denial to the Court of Appeals for the Seventh Circuit and to the United States Supreme Court were unavailing. Meanwhile, on September 10, 1979, defendant asked the Cook County circuit court if he could hand a copy of his "suit" *against Schwartz* to the court. Judge Bosco replied that he did not want to know anything about it. Defendant repeatedly accused Schwartz of committing fraud and perjury and stated throughout the proceedings that he did not want to be represented by Schwartz. An evidentiary hearing on the motion to suppress identification then followed and the motion was denied.

I

A. Defendant contends that he was denied his right to a fair trial when he was represented at trial by an attorney he did not want, had accused of incompetency, perjury and fraud, and against whom defendant had filed a section 1983 suit, which he maintains established a *per se* conflict of interest which required Schwartz to withdraw, citing *People v. Smith* (1967), 37 Ill. 2d 622, 230 N.E.2d 169, *People v. Terry* (1970), 46 Ill. 2d 75, 262 N.E.2d 923, and *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441. These cases are inapposite primarily because none involve a defendant who, as here, was attempting to thwart the prompt administration of justice by dilatory tactics. Before Schwartz represented defendant at trial, he previously had been represented by four different public defenders, none of whom were satisfactory in defendant's eyes, and one privately retained attorney. The trial court repeatedly substituted counsel at defendant's request. Consequently trial was delayed and rescheduled. On one occasion, the court, at defendant's urging, even reappointed a public defender, Winiecki, whom defendant had previously caused to be removed on grounds that he was a liar and a fraud. Throughout the pretrial proceedings, defendant had requested the appointment of a Chicago Bar Association attorney, in part, because of the "conspiracy" at the public defender's office. When the trial court granted defendant's motion, by appointing Schwartz, defendant quickly found that attorney also to be a fraud and a liar.

■■ The right to be represented by counsel of defendant's own choosing may not be utilized to frustrate the administration of justice or to otherwise embarrass the effective prosecution of crimes. (*People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229; *People v. Solomon* (1962), 24 Ill. 2d 586, 182 N.E.2d 736; *People v. Cross* (1979), 77 Ill. 2d 396, 413, 396 N.E.2d 812.) Absent a showing of good cause, it is within the discretion of the trial court to deny a request for substitute counsel. (*People v. Gray* (1965), 33 Ill. 2d 349, 211 N.E.2d 369; *People v. Jackson* (1981), 100 Ill. App. 3d 318, 323, 426 N.E.2d 1132; *People v. Gardner* (1977), 47 Ill. App. 3d 529, 532-33, 362 N.E.2d 14.) The trial court could

have reasonably found that the purpose of the request was to obtain further delay (*People v. Friedman* (1980), 79 Ill. 2d 341, 349), and that defendant was attempting to hamper the orderly process of law. *People v. Jackson* (1981), 100 Ill. App. 3d 318, 324; *People v. Finley* (1978), 63 Ill. App. 3d 95, 104, 379 N.E.2d 645; *People v. Gardner* (1977), 47 Ill. App. 3d 529, 534.

■■ Next, defendant makes allegations of incompetency of counsel. A defendant is entitled to a new trial if his appointed counsel incompetently represented his interests and this incompetency produced substantial prejudice to defendant without which the outcome of the trial would probably have been different. (*People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203; *People v. Goerger* (1972), 52 Ill. 2d 403, 288 N.E.2d 416.) A defendant is entitled to competent, not perfect, representation. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649.) If the purported incompetence is a matter of trial tactics or strategy, which are matters of professional judgment, such allegations cannot support a claim of ineffective representation. (*People v. Haywood* (1980), 82 Ill. 2d 540, 543-44, 413 N.E.2d 410; *People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630.) Defendant argues that Schwartz was incompetent in failing to make certain pretrial motions, failing to present a single witness and spending insufficient time with defendant before a pretrial hearing. The record indicates, however, that Schwartz' representation of defendant was adequate; if any deficiency existed, it did not prejudice the outcome of the trial.

B. Relying on section 114—5(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—5(c)), defendant maintains that the trial court improperly failed to conduct a hearing on his pro se motion for substitution of judges. He apparently means to rely on the 1977 statute, since section 114—5(c) was amended effective September 26, 1979, which occurred after defendant's motion for substitution of judges. The 1977 statute provided: "* * * any defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion the court shall conduct a hearing and determine the merits of the motion." The motion and affidavit in essence alleged that: defendant will not receive a fair trial before Judge Bosco; numerous constitutional rights of defendant, including the right to effective assistance of counsel, due process of law and equal protection were violated; Judge Bosco refuses to correct these violations and abuses; and that Judge Bosco does not allow him the right to file motions or to address the court.

■■■ None of the allegations were sufficient to disqualify Judge Bosco. The first allegation is a mere conclusion which fails to establish prejudice (see *People v. Nickols* (1976), 41 Ill. App. 3d 974, 979, 354 N.E.2d 474); the next two allegations merely assert, in effect, that Judge Bosco has ruled

adversely to defendant (*People v. Vance* (1979), 76 Ill. 2d 171, 178, 390 N.E.2d 867). The last allegation is not supported by the record. A motion for the substitution of a judge must be given a liberal interpretation; nevertheless, the motion must comply with the statute (*People v. Ganci* (1978), 57 Ill. App. 3d 234, 372 N.E.2d 1077), particularly where, as here, a defendant pursues a course of obstruction and delay in the trial of the case.

C. Defendant also contends that his right to a fair trial was denied because he was "forced" to trial, before a judge against whom he had filed a section 1983 lawsuit; however, the suit was never filed.[1] When defendant asked the judge if he could hand him a suit he had *against Schwartz*, a private attorney, Judge Bosco responded that he didn't want to know anything about it. Assuming *arguendo* that the trial court had been made aware of the putative section 1983 lawsuit against himself, the judge would have been immune from liability and any personal conflict was greatly diminished, if not eliminated. (See *Humble v. Foreman* (5th Cir. 1977), 563 F.2d 780.) More importantly, if defendant's position were to be adopted, future defendants could remove judges at will, by simply "filing" such suits, thereby circumventing the good cause requirement of section 114—5(c) and frustrating the orderly process of law in criminal cases.

## II

Defendant maintains he was denied his "right to a fair trial," because his attorney failed to make a motion to quash arrest at his request, presumably contending that his right to effective counsel under the sixth amendment was infringed. Schwartz refused to make the motion to quash arrest because it was raised and disposed of in the River Forest case and operated as "res judicata" to this case. Although defendant was convicted of two different crimes in different locations, there was but one arrest. Defendant maintains that: (1) the State waived the right to argue collateral estoppel; (2) collateral estoppel was inapplicable because there was new evidence to present; and (3) the order in the River Forest case was not final. Further, defendant asserts that the River Forest hearing was unfair because: (a) the judge who issued the arrest warrant also presided on the motion to quash arrest; (b) it was not brought to the court's attention that defendant did not have counsel at the lineup; (c) there was no probable cause to hold defendant for the lineups at which he was identified; and (d) the trial court failed to state its reasons for the denial of the motion to quash arrest.

---

[1] See Rule 11, N.D. of Ill. (1979). As previously noted, defendant's petition for leave to file the complaint *in forma pauperis* was denied and appeals from the denial were fruitless, according to district court and court of appeals documents attached to defendant's brief.

■■ Defendant's discussion makes no meaningful attempt to show that the purported incompetence of Schwartz produced substantial prejudice without which the outcome of the trial probably would have been different. (*People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203.) Assuming *arguendo* the validity of defendant's argument, that Schwartz erred in failing to move to quash the arrest, and assuming further that the trial court would have granted his motion and suppressed the tainted fruit, the lineup identification, the outcome of the trial would have been the same. The in-court identification of defendant by Dunlap and Vlahos had a separate and independent basis and therefore was admissible. (*Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; *People v. Bryant* (1980), 85 Ill. App. 3d 836, 841, 407 N.E.2d 597, *appeal denied* (1980), 81 Ill. 2d 603.) Thus, even if the pretrial motion had been brought to the attention of the trial court and allowed, the outcome of the trial would have been the same. The error complained of is harmless.

### III

Defendant's contentions that he did not receive a fair sentencing hearing because he was sentenced by a judge he was suing and represented by an attorney he was suing have already been discussed in part I of this opinion.

### IV

Defendant next urges that he was unconstitutionally penalized for going to trial, because of the disparity between the recommended sentence and the one imposed at the conclusion of his jury trial. This contention is without merit. The record shows that on June 26, 1978, defendant's privately retained counsel, Armonda, told Judge Schrier that they had a "402-conference where this gentleman [defendant] was offered on [*sic*] a plea six years on the recommendation of the State," and that defendant refused to "accept that." This statement by defendant's counsel is, apparently, the only evidence in the record showing that defendant was offered such a sentence before going to trial. It is unclear whether the recommendation was accepted by the court. On October 12, 1979, Judge Bosco sentenced defendant to 30 years, the maximum sentence for armed robbery. Ill. Rev. Stat. 1979, ch. 38, pars. 18—2 and 1005—8—1(a)(3).

■■ Defendant has failed to make an affirmative showing that his sentence was given as a punishment for exercising his constitutional right to a trial. (*People v. Massarella* (1979), 80 Ill. App. 3d 552, 573, 400 N.E.2d 436.) The fact that a heavier sentence was imposed after trial than the one offered prior to trial does not necessarily justify the inference that the higher sentence was imposed as a punishment. (*People v. Sivels* (1975), 60

Ill. 2d 102, 106-07, 324 N.E.2d 422; *People v. Davis* (1981), 93 Ill. App. 3d 187, 416 N.E.2d 1179.) Defendant's reliance on *People v. Dennis* (1975), 28 Ill. App. 3d 74, 328 N.E.2d 135, is misplaced. There a sentence, imposed following a jury trial, was 20 times greater than that offered during plea negotiations, a disparity absent here. Defendant's contention that "a greater disparity was not possible here" under the sentencing provisions of the armed robbery statute must be rejected; defendant could have entered a plea of guilty to a lesser crime than armed robbery.

■■■ Defendant's contention that the trial court improperly failed to state its reason for the sentence it imposed in violation of section 5—4—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c)) (hereinafter "Unified Code") is untenable. At the sentencing hearing, the trial court commented that it was aware of the numerous times defendant had been convicted of armed robbery. Later, the court stated that the facts and circumstances of defendant's "background" forced it to consider his sentence in terms of the "maximum." The court noted the importance of the concept of the maximum even if it were 60 or 100 years. The court also stated that it "must give * * * [defendant] the maximum" and sentenced him to 30 years. It thus appears that the maximum sentence was selected because of defendant's lengthy history of criminality and was substantially in compliance with the statute. The fact that the comments of the court were uttered shortly before its announcement of defendant's sentence is not material under section 5—4—1(c). A sentencing judge need not state every factor it considered in determining a defendant's sentence. (*People v. Padilla* (1980), 91 Ill. App. 3d 799, 802, 415 N.E.2d 12.) The trial court's exercise of discretion is entitled to great deference and weight (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882), and the sentence here, given defendant's long history of crime, must be affirmed. See *People v. Lykins* (1979), 77 Ill. 2d 35, 40, 394 N.E.2d 1182.

Defendant's urging that he did not make a knowing and intelligent waiver election to be sentenced under the new sentencing act lacks substance. The court informed defendant that he had a right to elect between being sentenced under the old or the new law and explained the differences between these laws. Defendant stated that he understood the concepts. When asked to make an election, defendant responded, in part, "[n]ow you are giving me a chance to what kind of a sentence [*sic*], under the new or old law * * * I have to take this under the new law." The trial court asked defendant's attorney whether he was convinced that defendant understood the difference between the provisions of the old and new act, to which defendant's attorney responded in the affirmative. Defendant's election was thus in accordance with section 8—2—4(b) of the Unified Code (Ill. Rev. Stat. 1979, ch. 38, par. 1008—2—4(b)). *People v.*

*Tolefree* (1980), 85 Ill. App. 3d 844, 849, 407 N.E.2d 604; *People v. Kurena* (1980), 87 Ill. App. 3d 771, 410 N.E.2d 277.

V

Finally, defendant maintains that section 5—3—1 of the Unified Code (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—1) was violated when he was sentenced in the absence of a current presentence report. In sentencing defendant on October 12, 1979, the trial court relied on a presentence report prepared approximately 10 months earlier, on December 8, 1978, in connection with defendant's conviction in the River Forest robbery. At the sentencing hearing the trial court asked the respective parties if they wanted to supplement in any way the information contained in the report. Defendant failed to object to the date or the contents of the report.

■■ In *People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9, the supreme court held that it was the duty of the parties to bring to the attention of the sentencing authority any alleged deficiency or inaccuracy in the presentence report. Any purported deficiency in the presentence report with respect to its lack of current information was waived by defendant's failure to object. (See *People v. Lane* (1980), 91 Ill. App. 3d 827, 830, 414 N.E.2d 1249.) Defendant's reliance on *People v. Youngbey* (1980), 82 Ill. 2d 556, 413 N.E.2d 416, is misguided. In *Youngbey*, a presentence investigation and report was held to be a mandatory requirement which cannot be waived unless both parties agree to the imposition of a specific sentence. *Youngbey* is inapposite; the issue here is whether the presentence report utilized by the court was defectively old rather than whether it was mandatory.

For the foregoing reasons, the conviction and sentence cannot be disturbed.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.