THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH MOORE, Defendant-Appellant.

Third District   Nos. 82—59, 82—69 cons.

Opinion filed October 19, 1982.

Robert Agostinelli and Verlin R. F. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and Kenneth Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The defendant is before us on two separate, but related matters originally tried in the circuit court of Kankakee County. Chronologically, the first stems from a burglary on October 10, 1980. The defendant pleaded guilty to that charge, was convicted and was sentenced to four years' probation on February 9, 1981. The second matter before us concerns charges of felony theft and burglary arising from an incident of May 23, 1981. After a jury trial, the defendant

was found guilty of both offenses and sentenced to concurrent three and five years' imprisonment respectively.

On January 22, 1982, the defendant was back in court on a petition to revoke his probation. Upon proof of the theft/burglary convictions, the court granted the State's petition and sentenced the defendant to a six-year term of imprisonment to run concurrently with the three- and five-year terms imposed for the more recent convictions. On appeal, the defendant attacks his theft and burglary convictions as well as the order revoking his probation.

The relevant facts are, for the most part, undisputed. Around 11:30 p.m. of May 23, 1981, Jerry Williams drove up the alley to his home and observed the defendant standing at his back door. The two men were acquainted with each other and the defendant inquired of Williams whether he wanted to buy a couple of televisions. Williams said he was broke, thereby ending the conversation.

Williams' suspicions were aroused, however, and he decided to leave the area and return within a few minutes and see what the defendant was up to. Williams was gone for about five minutes and then drove back down the alley, stopped the car and proceeded on foot toward his home.

He then observed that the kitchen light was on in the home of Willie Ann Smith, Williams' next-door neighbor, who was away for the evening. The defendant then appeared, leaving Smith's home by the back door and carrying a large object that looked like a stereo speaker. The defendant proceeded to the side of Smith's home. Williams went to the kitchen window of his own home, tapped on the window and told his wife to phone the police. Williams then went into his home, leaving the defendant standing by the Smith home. The police arrived, took Williams' statement and investigated the scene at Smith's home.

The officers found a television set and two stereo speakers sitting at the side of Smith's house. Willie Ann Smith returned to her home early the following morning. She observed that her basement window was broken and that her television and two stereo speakers had been removed from her home, which had been locked during her absence. Smith further observed that a picture frame, which contained a photograph of herself and her daughter, had been removed from her bedroom.

As a consequence of the officers' investigation, an indictment was returned charging the defendant with felony theft (value in excess of $150) and burglary. The defendant was arrested, pleaded not guilty, and the cause proceeded to a jury trial.

In addition to the foregoing facts, the evidence adduced at trial disclosed that Smith had paid between $160 and $165 for the television set a year and a half prior to the burglary, and $300 for the speakers when they were purchased in August of 1980. Photographs of the items were admitted into evidence. Testimony further established that Jerry Williams reported to the police that the defendant had burglarized his home and taken a television and stereo. These items were not recovered, and Williams eventually recovered on them from his insurance company. Finally, the defendant introduced testimony showing that Williams was incarcerated as a result of a shooting incident subsequent to his report of the burglary at the Smith residence. According to a cellblock partner, when being served with a subpoena for the instant case, Williams indicated his displeasure with Joe Moore because of his alleged burglary of Williams' home a year earlier.

At the conclusion of all evidence, the jury was instructed, retired to deliberate, and returned with verdicts of guilty on both the theft and burglary counts. Defendant's conviction and sentence were ordered as aforesaid. On appeal, defendant raises four issues: (1) whether his conviction of felony theft must be reduced to misdemeanor theft because the State's evidence was insufficient to prove that the fair market value of goods stolen exceeded $150 at the time of the offense; (2) whether the prosecutor's reference to jailhouse violence was so prejudicial to the defendant as to warrant the granting of a new trial; (3) whether the prosecutor's comment in closing argument—that the jury would be instructed not to consider the fact that the defendant did not testify—violated the defendant's fifth amendment privilege against self-incrimination; and, finally, (4) whether the defendant's probation revocation may stand depending upon our disposition of the foregoing issues.

In support of his first issue, defendant cites case law requiring that value be determined by fair market value as of the time and place of the theft. (*People v. Briseno* (1972), 2 Ill. App. 3d 814, 277 N.E.2d 743; *People v. Brown* (1976), 36 Ill. App. 3d 416, 343 N.E.2d 700.) The sole evidence respecting value in the instant case consisted of the testimony of Willie Ann Smith. Her testimony of cost and date of purchase, it is argued, is insufficient to establish market value at the time and place of the offense. We agree.

The State acknowledges that "fair cash market value" is the standard against which the stolen item(s) must be tested under section 16—1(e)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(e)(3)). The State asserts, however, that original cost

plus other proof, such as photographs and age of the items, suffices to establish the proper standard. Given such proof, the trier of fact can determine whether or not the fair cash market value of the item(s) exceeds $150. In this case, Willie Ann Smith testified that she "thought" the price of the speakers was $300 and she "guessed" that the portable television cost about $160-$165. The speakers were about 9 months old and the television, 1½ years. The black-and-white photographs of the items as they were found by the police outside of Smith's home disclose nothing remarkable to enhance or diminish value.

■ Defendant's point, which we believe is well taken, is that none of the evidence introduced by the State tended to establish whether the electronic items were even in working order. The items apparently had no value of any significance as furniture. Under the circumstances, failure to produce proof relating to quality or working condition is fatal to the State's case. (See *People v. Brown* (1976), 36 Ill. App. 3d 416, 421, 343 N.E.2d 700, 703-04 ("although proof of cost alone is insufficient, cost together with other proof, relating to condition, quality and modernness or obsolescence, may afford the basis for a valid finding as to value"); *People v. Parker* (1968), 98 Ill. App. 2d 146, 240 N.E.2d 475 (victim's testimony of auto's cost 6 months prior to theft together with testimony of repair expenses incurred between purchase and theft held unsatisfactory as proof of value on date of theft).) No expert testimony was introduced in the instant case from which the jury could deduce a fair estimate of cash market value at the time and place of the offense. *Cf. People v. Langston* (1981), 96 Ill. App. 3d 48, 420 N.E.2d 1090; *People v. Harden* (1969), 42 Ill. 2d 301, 247 N.E.2d 404.

■ Having determined that the State's proof of value cannot sustain the offense as charged, we must decide upon appropriate relief. The defendant requests that we reduce his conviction to misdemeanor theft (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(e)(1)). The State asks merely that we affirm the felony conviction and sentence as determined by the trial court. We elect to do neither. The record before us, including the presentencing report, discloses that the defendant has prior convictions of retail theft from 1976 and 1979. Accordingly, we will and do reduce the degree of the theft offense from a Class 3 felony (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(e)(3)) to a Class 4 felony (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(e)(1)). See *People v. Kelly* (1965), 66 Ill. App. 2d 204, 214 N.E.2d 290.

The defendant's second contention on appeal is that the prosecutor's cross-examination of Buford Nance, a cellblock partner of the

defendant, elicited evidence of criminal activity unrelated to the crime for which the defendant had been charged. The testimony established that Jerry Williams believed that the defendant had broken into his home and that, while both individuals were incarcerated, an act of jailhouse violence had occurred. The prosecutor did not specifically tie the defendant to the act of actual or threatened violence. However, it is defendant's position that the clear inference had been made that Nance's favorable testimony on behalf of the defendant resulted from Nance's fear of being subjected to violence himself.

■■ We note initially that the defense objected to the prosecutor's reference to a recent act of violence in the jail. After a discussion with counsel outside the presence of the jury, the trial judge sustained the objection and admonished the jury to disregard the remark. While, as a practical matter, this may have done little if anything to erase the impression of prison violence in the minds of the jurors we do not find that the remark was prejudicial in this case. Here Williams' eyewitness testimony of the crime along with evidence introduced by police investigators overwhelmingly support the jury's findings of guilt.

Similarly, we are constrained to find that the prosecutor's reference during closing argument to a defense tendered instruction—concerning the defendant's failure to testify (IPI Criminal No. 2.04)—was not prejudicial here. Specifically, the prosecutor stated in his introduction to closing argument, "I'm going to talk in my brief statement here about some instructions. Now that doesn't mean that some are more important than others. You read them all and you pay attention to them all." At its conclusion, he stated, "Lastly on the defendant's case you will be instructed that the fact that the defendant did not testify should not be considered by you in any way in arriving at your verdict. There are verdict forms ***." Although not objected to at trial, the defense preserved the issue for purposes of appeal by including it in the post-trial motion for a new trial. Having read the record thoroughly, we are convinced that the prosecutor's remark, in context, was not calculated to draw the jurors' attention to the defendant's exercise of his fifth amendment rights. *People v. Evans* (1979), 78 Ill. App. 3d 996, 398 N.E.2d 326.

■■ In our opinion and given the overwhelming nature of the evidence against the defendant, the prosecutor's remark, while certainly not condonable in any context, constituted harmless error. Accordingly, we affirm the defendant's conviction and sentence for burglary.

Finally, we affirm the trial court's order revoking the defendant's probation for the 1980 offense and the sentence imposed. In sum, we

affirm the defendant's convictions of burglary and felony theft and the revocation of his probation, and we remand to the trial court solely for reconsideration of the defendant's sentence for theft pursuant to section 5—8—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1), based on our reduction from a Class 3 to a Class 4 offense.

Affirmed; class of offense reduced; and remanded.

STOUDER and SCOTT, JJ., concur.