THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL CARTER, Defendant-Appellant.

First District (1st Division)   No. 82—2674

Opinion filed April 8, 1985.

Steven Clark and Scott Graham, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Jane E. Liechty, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McGLOON delivered the opinion of the court:

After a jury trial, defendant, Paul Carter, was convicted of rape, deviate sexual assault and two counts of armed robbery. Defendant was sentenced to extended terms of 40 years' imprisonment on each conviction to be served concurrently. On appeal, defendant contends: (1) there was a conflict of interest between himself and the assistant public defender; (2) he was prejudiced by the admission of improper evidence; (3) he was prejudiced by improper argument by the prosecutor; (4) he was denied effective assistance of counsel; and (5) the extended term sentences were improper.

We affirm.

After the completion of discovery and on the day scheduled for the beginning of trial, defendant presented a *pro se* motion to the court for appointment of a "bar association lawyer" or in the alternative for a continuance to retain private counsel. Defendant did not present any coherent reason why he was dissatisfied with the assist-

ant public defender who was representing him. Defendant acknowledged his attorney's competence but stated, "It is a conflict of interest between me and her. I don't want her to be my attorney." The assistant public defender informed the court she was prepared for trial and that she believed any further delay would not be warranted. The trial court denied defendant's motion to appoint alternate counsel but granted defendant a continuance of almost six weeks to retain private counsel or to prepare to represent himself. Immediately before adjournment, the assistant public defender stated, "I'm not giving you the police reports, sir." The judge then stated "Okay, fine." On the next scheduled court date, defendant was represented by the original assistant public defender and another assistant.

Defendant argues the above facts indicate there existed a conflict of interest between him and the assistant public defender.

A defendant is not entitled to court appointed counsel of his choice. (*People v. Lewis* (1981), 88 Ill. 2d 129, 430 N.E.2d 1346.) An indigent defendant is entitled to an attorney other than the public defender only upon showing a good cause, and it is within the discretion of the trial court to deny such request. (*People v. Tucker* (1981), 99 Ill. App. 3d 606, 425 N.E.2d 511.) A general dissatisfaction with his appointed counsel does not establish a conflict of interest between the defendant and counsel. *People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610.

In the case at bar, defendant did not show any good reason why he was entitled to an appointed counsel other than the public defender. Furthermore, he did not show any conflict of interest between himself and the assistant public defender. In addition, the trial court granted defendant sufficient time to retain private counsel or to prepare to represent himself. We find no error here.

A complaining witness testified she was waiting for an elevator with her 18-month-old child. An elevator arrived, but defendant, who was on the elevator, did not get off. The witness and her child got on the elevator with several other people. After some teenagers left the elevator, the witness with her child, another woman with two children, and defendant were alone in the elevator. Defendant pushed the emergency stop button and pulled out a butcher knife. He took money and jewelry from both the witness and the other woman in the elevator. Defendant told the women to undress, which they did. Defendant told the witness to kneel and forced her to perform fellatio on him. He then raped her. The elevator was illuminated by two light bulbs. She looked at defendant for 10 to 20 minutes on the elevator. Later she identified photographs of defendant and identified defendant at a

lineup.

The other woman on the elevator completely corroborated the previous witness' testimony. She identified defendant as the man who raped and committed deviate sexual assault against the previous witness and armed robbery against the two of them. She identified him in court, through photographs, and at a lineup.

Chicago police officer Katherine O'Brien testified that 12 days after the instant crimes, she was summoned to an apartment building near the scene of the subject crimes. Defendant was lying on the floor with a knife a couple of feet away. There was a crowd of people around him. Defendant was badly beaten. After talking to the people, the officers interviewed a woman in the building who told them defendant had raped her. Defendant was arrested and taken to a hospital. The officer identified a photograph of defendant taken at the hospital. The witness identified an "El Rukin tattoo" on his left breast. The witness was asked "What is El Rukin?" She answered that El Rukin was a street gang. Defense counsel objected, and the question was stricken.

The woman, whom Officer O'Brien interviewed, testified that two days before defendant was arrested, she, her baby, and defendant got on an elevator. Defendant pushed the emergency stop button, pulled out a butcher knife and asked for her jewelry and money. He then told her to take off her clothes. She complied. He told her to get on her knees and forced her to perform fellatio on him. Defendant then raped her. The elevator was well lighted and she had no trouble seeing defendant's face. The witness was taken to a police station where she looked at photographs "in a book." She identified a picture of defendant as the man who raped her. The defense did not present witnesses and waived closing argument.

Defendant argues he was prejudiced by the admission of improper evidence. Defendant complains of the evidence of crimes and criminal activity other than that charged in the instant indictment; specifically, the rape of the third victim. He also complains of the mention of the presence of a gang tattoo, and the insinuation that the victim identified defendant through "mug shots." Defendant also cites the improper admission of prior consistent statements of the victims through their testimony of previous identifications of defendant and police officers' testimony regarding the victims' identifications of defendant.

■ Regarding the rape and deviate sexual assault of the third victim, evidence of a crime for which defendant was not charged is admissible to show *modus operandi*. (*People v. Watson* (1981), 98 Ill.

App. 3d 296, 424 N.E.2d 329.) The admission of evidence of other similar crimes becomes more relevant when the defendant challenges the victims' identifications. *People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056.

■ In the case at bar, the circumstances of the crimes committed against the third victim were markedly similar to the circumstances of the crimes charged. In both cases, the offender rode the elevator with his victims, he pushed the emergency button, he used a butcher knife, he asked for jewelry and money, he forced the victims to undress, he forced the victims to perform the same acts in the same order, and the crimes occurred in the same vicinity. We conclude that the circumstances of the other crimes were clearly similar enough to be admissible to prove defendant's *modus operandi*.

■ Regarding the reference to the gang tattoo, we note defendant did not present the issue in his post-trial motion and thereby waived the issue. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■ ■ In any event, the reference to the gang tattoo does not constitute reversible error. First, the trial judge had the question stricken, thereby curing any possible error. (*People v. Moore* (1982), 109 Ill. App. 3d 874, 441 N.E.2d 409.) Second, the reference was minor. We conclude that the reference "did not result in an inflammation of the jury here so as to sway [it] from a rational evaluation of the facts in issue." *People v. Perez* (1981), 94 Ill. App. 3d 377, 380, 418 N.E.2d 969.

■ Similarly, in his post-trial motion, defendant failed to allege error in either the insinuation of previous criminal activity through the reference to police photographs of defendant, or the admission of prior consistent statements of the victims. He has therefore waived these issues for appellate review. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■ Nevertheless, this evidence was properly admitted. Use of police photographs for the identification of the accused has been accepted by our courts. (See *People v. Maffioli* (1950), 406 Ill. 315, 94 N.E.2d 191; *People v. Hardy* (1979), 70 Ill. App. 3d 351, 387 N.E.2d 1042.) Furthermore, evidence of the victim's out-of-court identification of the accused is relevant as long as that person is available in court for cross-examination. (*People v. Johnson* (1979), 68 Ill. App. 3d 836, 386 N.E.2d 642.) Similarly, police officers' testimony regarding victims' identifications is admissible to show the methods of police investigation. *People v. Jones* (1983), 114 Ill. App. 3d 576, 589, 449 N.E.2d 547.

Next, defendant argues he was prejudiced by improper argument by the prosecution. Specifically, defendant contends various statements were not based on evidence but were simply intended to arouse the passions of the jury. Defendant refers to characterizations of the defendant and references to the plight of the victims.

The style and substance of argument is left to the discretion of the trial court, which is in the best position to evaluate possible prejudice of the argument. (*People v. Maldonado* (1981), 101 Ill. App. 3d 948, 951, 428 N.E.2d 1097.) Its determination of the propriety of the argument will not be disturbed absent a manifest abuse of that discretion. 101 Ill. App. 3d 948, 951, 428 N.E.2d 1097.

We have studied the allegedly improper arguments and have determined they are not objectionable. The prosecution is allowed to impugn the character of the defendant. (*People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739.) The prosecutor can also decry the evils of the particular crime and its impact on the victims. (*People v. Wallace* (1981), 100 Ill. App. 3d 424, 426 N.E.2d 1017.) Furthermore, in light of the absolutely overwhelming evidence of defendant's guilt, any possible impropriety of the closing argument would be harmless beyond any doubt, and therefore would not be reversible. *People v. Baptist* (1979), 76 Ill. 2d 19, 28-29, 389 N.E.2d 1200.

Next, defendant argues he was denied effective assistance of counsel. Defendant cites counsel's waiver of closing argument.

Dispute over trial tactics or strategy cannot support a charge of ineffective assistance of counsel. (*People v. Gornick* (1982), 107 Ill. App. 3d 505, 437 N.E.2d 892.) In order for any alleged incompetence of counsel to necessitate reversal, defendant must show that the result of the trial would probably have been different absent the incompetence. (107 Ill. App. 3d 505, 437 N.E.2d 892.) A court will determine the effectiveness of representation based on the totality of the attorney's conduct at trial. *People v. Edmonds* (1984), 101 Ill. 2d 44, 461 N.E.2d 347.

In the case at bar, it is clear the decision by counsel to waive closing argument was a decision of trial tactics. Through that device, the prosecution was denied the opportunity for any rebuttal, which may have proved more damaging than any defense. Furthermore, our perusal of the entire record indicates that defendant was not only afforded adequate representation, he was afforded excellent representation. Defense counsel conducted effective cross-examination in an attempt to shake the identification testimony of the victims. Defense counsel also presented important motions and argued them passionately. We find no conceivable error here.

██ Finally, defendant contends the extended-term sentences of 40 years on each conviction were excessive and should be reduced, or in the alternative, the case must be remanded to determine the exact basis of the extended-term sentences.

At the sentencing hearing, the trial court heard testimony from two teenage girls who also testified to being attacked by defendant in elevators. Furthermore, it was determined that in 1978, defendant pleaded guilty to two counts of armed robbery. Upon passing sentence, the trial judge described defendant's actions as "savage and cruel and inhuman."

The trial court may impose an extended-term sentence:

"(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years *** or

(2) When *** the court finds the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty ***." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b).)

The determination of the proper sentence is left to the sound discretion of the trial court, and its decision will be reversed only upon an abuse of that discretion. *People v. Willingham* (1982), 89 Ill. 2d 352, 432 N.E.2d 861.

In the case at bar, the trial court had discretion to impose an extended term either on the basis of the "savage or cruel" behavior of defendant, or because defendant was convicted of two Class X felonies within 10 years of the instant convictions. We find no abuse of discretion here. See *People v. Sanford* (1983), 116 Ill. App. 3d 834, 452 N.E.2d 710.

For these reasons, the judgment and sentences of the circuit court of Cook County are affirmed.

Judgment affirmed.

CAMPBELL and O'CONNOR, JJ., concur.