THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM AMOS HARDY, Defendant-Appellant.

First District (2nd Division)   No. 77-242

Opinion filed March 27, 1979.

Larry S. Kajfes, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Francis X. Speh, Jr., and Ira H. Raphaelson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

After a jury trial defendant was found guilty of the murder of Thomas Johnson and the involuntary manslaughter of James Reed and was sentenced to serve concurrent sentences of 35 to 60 years for murder and three to nine years for involuntary manslaughter. Defendant appeals.

The issues presented for review are (1) whether the prosecutor withheld allegedly exculpatory evidence from defendant; (2) whether defendant was denied a fair trial because of allegedly improper prosecutorial conduct in cross-examination of Euna Parker and in closing argument; (3) whether in ruling on an objection the court advised the jury that it believed defendant to be guilty; (4) whether the trial court improperly limited defense counsel's opening argument; (5) whether the court improperly limited defense counsel's cross-examination of Eric Johnson[1] in regard to his possible interest in testifying against defendant; (6) whether the prosecutor improperly presented evidence to the jury that defendant had a prior criminal record; (7) whether the court erred in granting the State a 40-day extension of the trial term; and (8) whether defendant was convicted of murder and involuntary manslaughter beyond a reasonable doubt.

We affirm.

On April 6, 1973, at approximately 4 p.m., Thomas Johnson was shot and killed while driving his car in an alley near 63rd Street and Ellis

---

[1] Eric Johnson, the witness, is not related to the deceased, Thomas Johnson.

Avenue in Chicago. Thomas Johnson's car then struck and killed James Reed. Defendant was arrested in May 1974 in Washington, D.C., and charged with the murders of Johnson and Reed.

On March 8, 1976, prior to trial, the State filed a motion for an extension of the trial term under the Fourth Term Act (Ill. Rev. Stat. 1975, ch. 38, par. 103—5) to secure the presence of a witness, Eric Johnson, at trial. The following evidence was presented by the State in support of their motion.

Gerald Rochowicz, a sheriff's police investigator, testified that he made numerous attempts to contact Eric Johnson in January and February 1976, including attempts to serve Johnson with five or six subpoenas. Rochowicz also contacted Eric Johnson's girl friend, aunt, roommate and the building manager at Johnson's apartment in his efforts to locate the witness.

Assistant State's Attorney Agran testified that he had personally spoken with Eric Johnson in December 1975 and that the witness assured Agran that he would be available to testify at trial. Agran arranged two appointments to interview Johnson. Johnson failed to appear for the interviews, and Agran enlisted investigator Rochowicz to locate Johnson. Agran learned that on March 27, 1976, Eric Johnson was scheduled to appear under an assumed name in "gun court." He stated that there was reason to believe that the witness' presence at trial in the case at bar be secured because Johnson had been present at previous court appearances in "gun court."

The court ruled that the State had demonstrated due diligence and the court granted a 40-day extension of the trial term.

At trial Eric Johnson testified that at approximately 4 p.m. on April 6, 1973, he was standing on a corner at 63rd Street and Ellis Avenue in Chicago. He observed defendant, whom he had seen on two prior occasions, "just standing around and talking." Johnson observed a white Pontiac driven by Thomas Johnson stop directly across the street and then "accelerate down the alley." As Thomas drove down the alley, defendant drew a gun and fired six shots in the direction of the white car.

Eric fled after the incident, but he later told a friend of Thomas Johnson that he had witnessed the shooting. On May 3, 1973, the mother of Thomas Johnson contacted Eric Johnson and asked if Eric would speak to the police. Accompanied by police officers, Eric proceeded to the police station and viewed 17 photographs. He identified defendant in a photograph as the assailant of Thomas Johnson. Eric again identified defendant in a lineup held on May 14, 1974.

Thelma Rembert and her foster daughter Victoria Lynch testified that at 4 p.m. on April 6, 1973, they were sitting on their porch which overlooked an alley leading to Ellis Avenue. They heard "gun shots" and

saw a white car "speeding down the alley out of control." The car then hit an old man walking his dog, hit a post and "stopped in front of our house."

George Edgar, a Chicago police officer, testified that at approximately 3:45 p.m. on April 6, 1973, he had a conversation with Ken Wright[2] and Thomas Johnson near 63rd Street. Edgar observed Thomas Johnson drive away in a white automobile and shortly thereafter Edgar heard gunshots. Edgar proceeded to Ellis Avenue where he observed a woman[3] had been shot, suffering only a "flesh wound." Edgar then found an old man, later identified as James Reed, lying in the alley. Further in the alley Officer Edgar found Thomas Johnson "slumped over the wheel of the car."

It was stipulated that Dr. Shalgos, a Cook County coroner's pathologist, would testify that Thomas Johnson died as a result of internal injuries from a .38-caliber bullet wound, and James Reed's death resulted from "extreme skull fractures" caused by the impact of an automobile.

Euna Parker, a social worker residing in Texas at the time of trial, testified for the defense as follows: On April 7, 1973, she was walking on Ellis Avenue and observed a "17 to 18-year-old man with a baby face" shoot at a white car. At the police station Ms. Parker viewed 17 photographs, but she could not identify anyone as the assailant. She testified that after she had moved to Texas, State's Attorney Agran sent her a photograph of a lineup which included defendant, but that she could not identify anyone in the picture as the shooter.

Investigator Martin testified that Euna Parker had viewed only five or six photographs, not 17 as she had testified. He testified that she never told him that defendant was not the shooter; that Euna Parker told him that the photograph of defendant "was close" and "resembled the man that did the shooting."

The jury found defendant guilty of the murder of Thomas Johnson and of the involuntary manslaughter of James Reed.

## I

■■ Defendant contends that the State withheld from defense counsel allegedly exculpatory evidence that Euna Parker was unable to identify defendant as the assailant. In *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, the United States Supreme Court held that an accused is denied a fair trial when the prosecution withholds exculpatory evidence from the accused until after trial. However, in *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392, the Supreme Court held that the prosecutor's failure to disclose exculpatory evidence

---

[2] The record does not further identify Ken Wright.

[3] Defendant was not charged with any offense regarding the woman, later identified as Francis Debril.

must be "material" and result in the denial of a fair trial. The court defined "materiality" as omitted evidence which creates a reasonable doubt of guilt that did not otherwise exist. The *Agurs* court further held that the mere possibility that evidence "might have aided the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."

■ In the case at bar, while the fact that Euna Parker failed to identify defendant as the assailant is arguably favorable to the accused, it is not alone sufficient to raise a reasonable doubt which would require reversal. See *People v. Owens* (1st Dist. 1977), 46 Ill. App. 3d 978, 990, 361 N.E.2d 644; also see *People v. Starr* (5th Dist. 1976), 37 Ill. App. 3d 495, 498, 346 N.E.2d 410.

Euna Parker's inability to identify defendant raises only an issue as to the credibility of the witness Eric Johnson. Where identification is at issue the testimony of a single witness is sufficient to convict defendant if the witness is credible. (*People v. Gonzales* (1st Dist. 1978), 60 Ill. App. 3d 980, 989, 377 N.E.2d 91.) Thus if the jury believed Eric Johnson's testimony, it was sufficient to convict defendant.

Defendant cites *People v. Elston* (4th Dist. 1977), 46 Ill. App. 3d 103, 360 N.E.2d 518, as authority that the mere failure of a witness to identify a defendant is exculpatory evidence. In *Elston* four or five witnesses were shown a lineup which included defendant Elston. Two witnesses could not identify defendant, and two witnesses identified someone other than defendant. Additionally, each witness was shown five black and white photographs of other individuals and a color polaroid shot of defendant. Two witnesses identified the polaroid photograph, and two witnesses could not identify anyone. The court found the suggestiveness of the color photograph, coupled with the series of nondisclosures, denied defendant a fair trial.

*Elston* is distinguishable from the case at bar. Here there was only one alleged nondisclosure of a failure to identify defendant and no misidentification by the witness, whereas in *Elston* several witnesses failed to identify or identified someone else as perpetrator of the crime. Under the "materiality" test of *Agurs*, the evidence does not "create a reasonable doubt that did not otherwise exist."

■ Furthermore, we note that Euna Parker was listed as a possible State's witness in a list of witnesses furnished to defendant before trial. Also after the State rested its case, defense counsel was informed that Euna Parker had failed to identify defendant. Assuming arguendo that her failure to identify defendant was "material" exculpatory evidence, the record does not show that defendant was severely prejudiced because Euna Parker testified in defendant's behalf. In *People v. Tate* (1976), 63 Ill. 2d 105, 112,

345 N.E.2d 480, defendant contended that the State withheld exculpatory testimony found in the grand jury testimony of a witness until that witness testified at trial. The court held that the failure to furnish the exculpatory evidence to defendant before trial did not violate *Brady v. Maryland* and did not unduly prejudice defendant. Thus in the case at bar defendant's rights were not violated because the evidence claimed to be withheld was actually heard by the jury. *People v. Foster* (1st Dist. 1977), 56 Ill. App. 3d 22, 37, 371 N.E. 961.

## II

### A

Defendant contends that the prosecutor's conduct during cross-examination of Euna Parker denied defendant a fair trial. The prosecutor asked Euna Parker if she had tentatively identified defendant's picture to inspector Martin, and the following exchange occurred:

"Euna Parker: I did not.

Q: You deny that.

A: I told him—

Q: Do you realize you are under oath.

A: I told him it resembled the man."

We find the prosecutor's questioning was not prejudicial. Ms. Parker testified that she viewed 17 photographs and could not identify anyone as the assailant. The prosecutor, in asking the witness if she realized she was under oath, apparently was attempting to lay the foundation to impeach her statements through the testimony of inspector Martin. Thus it was not improper during cross-examination to question the witness' testimony. See *People v. Millet* (1st Dist. 1965), 60 Ill. App. 2d 22, 36, 208 N.E.2d 670.

Defendant next contends that the prosecutor's following questions to Ms. Parker were improper:

"Q: You did not testify before the grand jury of Cook County did you.

Q: You did not testify before a Judge in a Preliminary Hearing in this matter did you."

Defendant alleges that these questions infer that Euna Parker was untruthful because she failed to testify at other hearings. The cases cited by defendant are concerned with an accused's Fifth Amendment privileges not to be compelled to call witnesses or raise defenses at a preliminary hearing, and thus they are inapposite to the case at bar. Although the questions may have been inartful, or perhaps intemperate, we find no prosecutorial misconduct or substantial prejudice which denied defendant a fair trial. *People v. Houck* (1st Dist. 1977), 50 Ill. App. 3d 274, 288, 365 N.E.2d 576.

## B

■■ Defendant contends that during closing argument the prosecutor improperly inferred that the prosecutor personally believed that Euna Parker was lying. The record reflects that the testimony of Euna Parker was contradicted by the State's witnesses and her credibility was at issue. It is well settled that a prosecutor may discuss the witnesses and their credibility in closing argument (*People v. Franklin* (1st Dist. 1976), 42 Ill. App. 3d 408, 355 N.E.2d 634), and a prosecutor may infer that a witness' testimony is false if he relies on the evidence and legitimate inferences from it to support his argument. *People v. Owens* (1st Dist. 1977), 46 Ill. App. 3d 978, 361 N.E.2d 644.

■■ Defendant contends that the prosecutor improperly "injected his own belief" that Eric Johnson and other witnesses were afraid to testify against defendant. The prosecutor remarked:

> "Can you conceive of the kind of person who would do that under those circumstances. If you can, if you can and can you realize if a person can do that, and you realize that a person who does that can do so much more, if you realize that, then you will truely [*sic*] understand just why so few people took that stand?"

In the context of the record it is apparent that the prosecutor's argument was directed to the viciousness of the crime and not to any threat made by defendant. The comment might have been better left unsaid; however, in view of defense counsel's prompt objection and the court's prompt ruling and instruction to the jury to disregard the comment, no substantial prejudice resulted to defendant from the comments. *People v. Sawyer* (1969), 42 Ill. 2d 294, 251 N.E.2d 230.

■■ Defendant also alleges that in closing argument the prosecutor inferred his personal belief of defendant's guilt. The prosecutor argued:

> "* * * if, Euna Parker had said that this is not the man on any occasion, would he be here today. He couldn't be here today."

It is clear that the prosecutor's statements were directed to the credibility of the witness Euna Parker and thus not improper. See *People v. Ross* (1st Dist. 1978), 60 Ill. App. 3d 857, 864, 377 N.E.2d 230.

After reviewing the prosecutor's entire closing argument, we believe that the prosecutor's comments did not constitute "a material factor in the conviction" and thus were not reversible error. *People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363.

## III

Defendant contends that the court erred in sustaining an objection which allegedly advised the jury that the court believed defendant to be

guilty. During cross-examination of Eric Johnson the following exchange occurred:

> "Mr. Kajfes: Okay. And then the assailant took out the weapon—or strike that. Who was standing closer to the car, yourself or the assailant."
>
> The witness: The assailant.
>
> Mr. Hendrick: Objection to the constant reference assailant. The assailant has been identified in this Court as Mr. Hardy, the defendant.
>
> The Court: As to the word assailant the objection will be sustained."

■■ It is clear that the trial court should not express by word or indicate by conduct "that his opinion is in favor of or against defendant." (*People v. Godbout* (1st Dist. 1976), 42 Ill. App. 3d 1001, 1006, 356 N.E.2d 865.) However, in the instant case it would appear that defense counsel's use of the word "assailant" implied his own disbelief of Eric Johnson's identification testimony. Johnson had already identified defendant as the "assailant," and the objection was apparently directed to the use of the term "assailant" in the abstract. Thus the record does not indicate that the court improperly inferred its belief of defendant's guilt.

### IV

Defendant contends he was denied his right to the assistance of counsel because the court allegedly limited defense counsel's opening argument. Before trial the court granted the State's motion in limine which prevented comment on Eric Johnson's criminal record during defense counsel's opening statement. The court permitted defense counsel to comment that the credibility of the witnesses will be in question but ruled that informing the jury of the witness' prior criminal record would be testifying during opening argument to matters which may or may not later be admissible as evidence. The opening statement is not evidence and it is not permitted to become counsel's argument to the jury. *People v. Bolton* (3d Dist. 1976), 35 Ill. App. 3d 965, 343 N.E.2d 190.

■■ We note that defense counsel not only failed to object to the motion but agreed to the restriction and requested that the State not be allowed to bolster Eric Johnson's credibility. Thus defendant's failure to object to the motion at trial waives the right to object on appeal. See *People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.

### V

■■ Defendant contends the court erred in allegedly curtailing defense counsel's cross-examination of Eric Johnson. During defense counsel's cross-examination the following exchange occurred:

"Mr. Kajfes: I see. Now do you believe that you might receive any benefit from testifying in this cause?

Eric Johnson: No I don't.

Mr. Kajfes: You don't feel it at all beneficial to you?

Mr. Agran: Objection, Judge, asked and answered. Objection as to the last portion. It has already been asked and answered.

The Court: As to the last question, the objection will be sustained."

Defendant alleges that the court in sustaining the objection precluded cross-examination of the witness' possible bias. The record reveals that the court sustained the objection because the same question was asked and answered previously by the witness. Where questions asked on cross-examination call for a repetition of testimony already given, the trial court in the exercise of its discretion may refuse to permit the repetition. (*People v. Meeks* (1st Dist. 1973), 11 Ill. App. 3d 973, 978, 297 N.E.2d 705.) We conclude that the court in sustaining the objection caused no substantial prejudice to defendant. Furthermore, after the objection, defense counsel voluntarily chose to assume a different avenue of cross-examination.

■■ Defendant contends that the court limited defendant's right to cross-examination of Eric Johnson by not permitting defense counsel to ask the witness about prior arrests and bond forfeitures which appeared on his police record. The court ruled that defense counsel could inquire regarding Eric Johnson's prior convictions and pending charges but not bond forfeiture warrants or prior arrests which were not pending. It is clear that proof of arrests, indictments and charges are not admissible to demonstrate the bad character of a witness. (*People v. Norwood* (1973), 54 Ill. 2d 253, 257, 296 N.E.2d 852.) However, defendant is entitled to inquire regarding pending charges against a witness which might demonstrate interest or bias and affect the credibility of a witness. (*People v. Norwood*, at 25; *People v. Baptiste* (1st Dist. 1976), 37 Ill. App. 3d 808, 812, 347 N.E.2d 92.) Since only pending charges would be relevant to demonstrate that the witness might receive a benefit in exchange for his testimony, we believe the court did not err in restricting the cross-examination to prior convictions and pending charges. The court has wide discretion in determining the latitude allowed on cross-examination, and its ruling will not be disturbed absent a clear abuse of discretion resulting in manifest prejudice to defendant. *People v. Hanks* (4th Dist. 1974), 17 Ill. App. 3d 633, 307 N.E.2d 638.

## VI

■■ Defendant contends that the court erred in allowing the prosecutor

to introduce into evidence a police photograph of defendant which allegedly inferred defendant had prior arrests or convictions. Where defendant does not testify, it is error to present evidence of a prior arrest of defendant which is unrelated to the offense charged. (*People v. Edwards* (1976), 63 Ill. 2d 134, 345 N.E.2d 496.) However, an exception to this rule is recognized where the evidence tends to aid in the identification of the accused as the perpetrator of the offense. (*People v. Burdine* (1st Dist. 1978), 57 Ill. App. 3d 677, 686, 373 N.E.2d 694.) "Mug shots" are not held to be prejudicial as constituting evidence of other offenses where they are relevant to the issue of identity. *People v. Longstreet* (1st Dist. 1974), 23 Ill. App. 3d 874, 881, 320 N.E.2d 529.

■■ In the case at bar the photographs, including one of defendant, were shown to both Eric Johnson and Euna Parker in 1973 for the purpose of identifying the assailant. Prior to being admitted into evidence, the prosecutor removed the police legends from the photographs. Here, as in *Longstreet*, by removing the police legends the prosecutor attempted to disguise as much as possible the fact that the photographs were taken from police files. Thus it was not unreasonable for the court to hold that the probative value of the evidence outweighed the tenuous inference that prior criminality may have occurred. *People v. Castillo* (1st Dist. 1976), 40 Ill. App. 3d 413, 422, 352 N.E.2d 340.

## VII

Defendant contends that he was denied his right to a speedy trial because the court abused its discretion in granting the State a 40-day extension of the trial term to locate the witness Eric Johnson. Subsection (c) of the Fourth Term Act (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(c)) provides as follows:

> "If the court determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of the State for not more than an additional 60 days."

It is well settled that the power to grant an extension of the statutory trial term is within the discretion of the trial court, and a reviewing court should not disturb that judgment unless there has been a clear abuse of discretion. *People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230; *People v. Watson* (1st Dist. 1977), 47 Ill. App. 3d 665, 365 N.E.2d 95.

The record reflects that in December 1975 State's Attorney Agran had spoken twice with Eric Johnson, and Johnson had assured Agran that he would meet with Agran and appear in court. After Eric Johnson failed to

meet with Agran or attend a court date in this matter on December 19, 1975, Investigator Rochowicz of the sheriff's office was assigned to locate the witness.

Rochowicz testified that he had spoken to Eric Johnson's girl friend at Johnson's apartment on January 21 and 23, 1976, but she did not know where Johnson could be located. On February 17 and 24, 1976, Rochowicz again went to Johnson's apartment, but Johnson's girl friend and an unidentified woman named Nicole did not know the whereabouts of Johnson. Rochowicz had spoken with Eric Johnson's aunt "a number of times," but she could not locate the witness. More than five subpoenas were issued in an effort to locate Johnson after he failed to attend the December 19, 1975, court hearing.

■■ The State's efforts to locate the witness were not unreasonable in view of the fact that in assuring Agran that he would be available as a witness, Johnson did not give the State reason to believe that he would be difficult to locate. Thus we believe the State's efforts were sufficient to demonstrate due diligence. See *People v. Franklin* (1st Dist. 1976), 42 Ill. App. 3d 408, 355 N.E.2d 634; *People v. Craigwell* (1st Dist. 1976), 40 Ill. App. 3d 889, 894, 353 N.E.2d 101.

### VIII

■■ Defendant's final contention is that Euna Parker's inability to identify defendant was sufficient to raise a reasonable doubt of guilt. However, Euna Parker's testimony was directly contradicted by investigator Martin's testimony that she had tentatively identified defendant's photograph. It is well settled that it is the function of the trier of fact to determine the credibility of a witness and the weight to be afforded her testimony. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) The fact that a witness could not identify defendant as the "shooter" is not alone sufficient to raise a reasonable doubt of defendant's guilt which would require reversal. See *People v. Owens* (1st Dist. 1977), 46 Ill. App. 3d 978, 990, 361 N.E.2d 664; also see *People v. Starr* (5th Dist. 1976), 37 Ill. App. 3d 495, 498, 346 N.E.2d 410.

■■ It was not unreasonable for the jury to believe Eric Johnson's identification of defendant. The testimony of one witness is sufficient for a conviction, provided the witness is credible and the accused is viewed under circumstances which would permit a positive identification. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Lumpkin* (1st Dist. 1975), 28 Ill. App. 3d 710, 329 N.E.2d 262.) Johnson's testimony that he had seen defendant on two occasions prior to the shooting strengthens Johnson's identification testimony. *People v. Morris* (1st Dist. 1978), 65 Ill. App. 3d 155, 161, 382 N.E.2d 383.

Defendant further alleges that Eric Johnson's testimony was not

credible because he is a "convicted robber who has reason to lie." The jury was aware of Johnson's prior convictions, pending charges, and of defense counsel's allegation of the witness' possible interest in testifying. Despite this the jury apparently believed Johnson's testimony.

The reliability and credibility of identification witnesses is an issue for the jury to resolve (*People v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602), and the jury's determination will not be overturned unless it is so contrary to the evidence that it cannot be justifed. *People v. Smith* (3d Dist. 1977), 52 Ill. App. 3d 53, 367 N.E.2d 84.

For the foregoing reasons we find no reversible error, and we affirm defendant's conviction.

Affirmed.

DOWNING and HARTMAN, JJ., concur.