THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CURTIS MALONE, Defendant-Appellant.

First District (4th Division)   No. 81—1753

Opinion filed April 7, 1983.

ROMITI, P.J., dissenting.

Frederick F. Cohn, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean P. Karlos, and Garritt E. Howard, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Curtis Malone, appeals his conviction of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a)). After a jury trial, he was sentenced to 10 years in the Illinois Department of Corrections. He raises the following issues for review: (1) whether he was denied due process when the prosecution failed to provide certain evidence; (2) whether he was denied his constitutional right of confrontation; (3) whether the trial judge erroneously refused to recuse himself prior to hearing evidence on whether trial counsel had rendered ineffective assistance of counsel; (4) whether he was denied effective assistance of

counsel; (5) whether in-court identification was the result of an impermissibly suggestive identification procedure; and (6) whether the prosecution's final argument was improper and prejudicial. We affirm.

Defendant was charged by information with the armed robbery and attempted murder (Ill. Rev. Stat. 1979, ch. 38, pars. 18—2(a), 8—4(a)) of Tom Hall on February 7, 1980, and March 4, 1980. The instant case involves the trial of defendant for the robbery occurring on March 4, 1980.

At a hearing on defendant's motion to suppress a lineup identification, Ronald Grego, an Oak Park, Illinois, policeman, testified that he arrested defendant at about 9:30 p.m. on March 5, 1980, pursuant to a robbery report by the victim, Tom Hall. Grego arranged a lineup of five men, two of whom were suspects and two of whom were policemen not in uniform. Hall positively identified the two suspects, defendant Malone and W. B. Bolton.

Hall testified that he immediately recognized the suspects in the lineup; he did not notice the other men and did not know whether they fit the description that he had given to the police. Hall described the offender as five feet seven inches in height and weighing 140 pounds. Defendant Malone was 5 feet 10 inches and weighed 150 pounds. At the close of the hearing, the trial court denied the motion to suppress identification.

Testimony at trial established the following.

Tom Hall was the manager of a gas station in Oak Park, Illinois, on March 4, 1980. The day was sunny and clear. At about 3:15 p.m., Hall was alone in the office when a gold Buick with a tan top entered the station. There were two men in the car; the taller man was driving and the shorter man was the passenger. Hall recognized the passenger as the person who had robbed him in the same gas station on February 7, 1980. The taller man came into the office for cigarettes, returned to the car and drove off. Hall went into the washroom. As he opened the door to leave, the man who had been the passenger in the Buick shoved the door back toward Hall. The lights were on and Hall looked directly into the man's face. The man was pointing a .38-caliber revolver at Hall. He demanded Hall's money and said that he would kill him. Hall gave the man about $100. After a struggle, the man fired a shot and left. Hall heard another shot. At that point in his testimony, Hall identified defendant Malone as the passenger in the Buick and as the man who robbed him. After Hall telephoned the police, a neighbor, Georgia Bowling, ran into the office. When the police arrived, they removed a bullet from the commode.

On February 7, 1980, the day was sunny and clear. Around 4

p.m., a man taller than the defendant came into the office, bought cigarettes and left. Then defendant walked into the office, bought cigarettes and left. As Hall was counting money, defendant returned pointing a gun at Hall. Defendant took the money and forced Hall outside, threatening to kill him. When Hall ran back toward the office, defendant shot at him three or four times. At that point in his testimony, Hall identified defendant Malone as the person who had robbed him on February 7, 1980. On cross-examination, Hall stated that he did not know whether the taller man he saw in the company of defendant on March 4, 1980, was the same taller man he saw on February 7, 1980.

Georgia Bowling testified that on March 4, 1980, at about 3:20 p.m., she was walking her dog in the alley behind her house, which is west of the gas station. She noticed two men in a gold Buick. As she returned to her house she heard a gunshot. She continued walking and saw the same car with both doors open and the motor running. No one was in the car. She noticed the license plate number, ZM 1239. Two men ran from behind the garage and jumped in the car. Bowling ran into her house, jotted down the license number and ran over to the gas station. She showed the license number to Hall and talked to the police on the telephone. On March 5, 1980, Bowling identified the car at the Oak Park police station.

On cross-examination, the defense attorney asked Bowling to describe the two men. He inquired as follows:

"I ask you to look around this courtroom and ask you if you recognize either of the two people you saw?

A. I see one.

Q. What was that man wearing?

A. Green pants and waist hip length jacket.

Q. What color was the jacket?

A. Black.

Q. And by hip length jacket you mean one that stopped at the waist, is that correct?

A. That's right.

Q. Showing you what has previously been identified as People's Exhibit Number 5 I ask you to look at that photograph and ask you if you see an individual under the number three.

A. That's the man, but not the coat.

Q. Is that the type of coat the man was wearing on March 4th?

A. No.

Q. Did you see any man on March 5th when you went to the

police station to see the car?
A. Yes, I did.
Q. Did you view a lineup at that time?
A. Yes, I did.
Q. Do you recall what the other man was wearing?
A. I believe he also had a jacket on, but I didn't look.
Q. Had you ever seen either of these two men before?
A. Not until that day."

Greg Ford, an Oak Park policeman, received the robbery report on March 4, 1980. The offender was described as five feet seven inches in height with a full beard, weighing 140 pounds, about 25 to 30 years old, and wearing green pants and a white beanie-type hat.

Ronald Grego, an Oak Park policeman, arrested defendant and W. B. Bolton on March 5, 1980, after surveillance of a car with the license plate number reported by Bowling.

Bernard Bucholz, an evidence technician, removed bullets from the walls of the gas station following the February 7 and March 4, 1980, robberies. The parties stipulated that the bullets were fired from a .38-caliber revolver.

Curtis Malone testified that he never went to the gas station and fired at anyone. He had been in military service and was familiar with .38-caliber revolvers, but he never had a gun on February 7 and March 4, 1980. He had been laid off from his job on January 19, 1980, and lived about three or four blocks from the gas station.

During its deliberations, the jury sent questions to the judge and received answers as follows:

"There is a major discrepancy between the jurors as to Mrs. Bowling's testimony. Some of us believe that Mrs. Bowling actually picked Mr. Malone out of the line-up at the Oak Park police station on March 5, 1980. Can you confirm or deny this pursuant to the testimony.

Respectfully,
Forman.

[Judge's response]: You are asking about evidence which I cannot comment upon.

4:00 P.M.

You are instructed to continue your deliberations.
Judge Welfeld.

[Forman]: 1. How can we clear up information we have questions on?

2. May we have the transcript of Mrs. Bowling's testimony?

[Judge's response]: You are asking about testimony which is evidence that I cannot comment upon.

You must rely upon your collective memories. *** No transcripts are available.

[Forman]: Did Mrs. Bowling identify in a line-up, Mr. Curtis Malone?

Who did she identify as the person who shook his finger at her?

[Judge's response]: You, the Jury, have heard the evidence and it is improper for me to comment, explain or otherwise discuss any of the evidence.

Judge Welfeld."

The jury found defendant guilty of armed robbery and not guilty of attempted murder.

On June 25, 1981, at the hearing on a motion for a new trial, defendant's original attorney, Steven Decker, was replaced by Frederick Cohn. Georgia Bowling testified that at a lineup conducted two days after the March 4, 1980, robbery, she picked out a police officer and another person not the defendant. Prior to trial, she told an assistant State's Attorney that she did not identify defendant at a lineup. Officer Grego did not recall whether he told anyone that Bowling could not make an identification.

The prosecutors, Mary Ann Callum, Paul Gridelli, and James McCarter, testified that they had no conversations with Bowling about her failure to identify defendant at a lineup.

On July 8, 1981, the motion for a new trial was denied and defendant was sentenced to 10 years in the Illinois Department of Corrections. Defendant appeals.

The first issue raised by defendant is whether he was denied due process where the prosecution failed to disclose that Bowling viewed a lineup and did not identify defendant. He contends that this failure to disclose cannot be excused by the argument that the assistant State's Attorneys were unaware of the existence of that evidence. Defendant refers to the questions submitted to the trial judge by the jury during their deliberations in support of his claim that he was prejudiced.

■ We disagree with defendant's contentions. We have examined Bowling's testimony. At trial she described the car at the scene of the robbery and its license plate number. She did not testify in order to identify the offender. To justify a reversal, the prosecutor's failure to disclose exculpatory evidence must be material and result in the de-

nial of a fair trial. (*People v. Hardy* (1979), 70 Ill. App. 3d 351, 355-56, 387 N.E.2d 1042, 1047.) In the instant case, these criteria are not met because Bowling's failure to identify defendant is not material and he was not prejudiced by the nondisclosure. The identification of defendant by the victim Hall was sufficient to prove defendant guilty beyond a reasonable doubt. Where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made. (*People v. Lindsey* (1979), 72 Ill. App. 3d 764, 774, 391 N.E.2d 382, 389.) We hold, therefore, that defendant was not denied his right to due process because of the nondisclosure of Bowling's failure to identify him in a lineup.

The next issue raised by defendant is whether he was denied his constitutional right of confrontation. Defendant argues that at trial Hall testified he was unsure whether Bolton was present at the February 7 robbery. This is inconsistent with his preliminary hearing testimony positively identifying Bolton as being present on February 7. Defendant claims that it was error to limit this impeachment because it relates to Hall's ability to make an identification.

■ We hold that defendant's argument has no merit. At trial, Hall did not contradict his earlier testimony; he simply could not recall the questions asked and the answers he gave with respect to Bolton's involvement in the February 7 robbery. He did state that he was unsure whether the taller of the two men he saw on February 7 was the same man he saw with defendant on March 4. The jury was made aware of this "inconsistency" by defendant's cross-examination of Hall. Hall positively identified defendant at the preliminary hearing and at trial. We fail to see how uncertainty about Bolton's participation in both robberies impairs Hall's positive identification of defendant. Therefore, we conclude that defendant was not denied his right of confrontation.

■ Defendant argues that the trial judge erroneously refused to recuse himself prior to hearing evidence on whether trial counsel had rendered ineffective assistance of counsel. At a post-trial hearing on June 25, 1981, the following conversation occurred between the defendant's attorney and the trial judge:

"THE COURT: You have alleged ineffectiveness of counsel—

MR. COHN: Right.

THE COURT: And you made pretty strong remarks about him and I would say the Court was appalled that—how does

that tie up with this phase of the motion.

MR COHN: First of all I am not sure how the Court can be appalled until you hear the evidence supporting my allegations.

THE COURT: I read your motion.

MR. COHN: I understand it. The motion is merely—

THE COURT: You talk about one, you talk about a man blundering—

MR. COHN: That's true.

THE COURT: A lawyer that has appeared in all of the courts around here in this building. He has tried cases here, he is highly regarded as a highly skillful lawyer here and you put these things in a report that is quite surprising, I never saw it before and never anticipated seeing it before and it is there."

Later, during the same hearing, the following conversation occurred between the same parties:

"THE COURT: *** All that is left is your allegations of ineffectiveness—incompetency and ineffectiveness of counsel.

MR. COHN: That, your Honor, yes.

THE COURT: All right, then I will state that I'm amazed that you would make such an allegation, just amazed, for the record.

MR. COHN: Your Honor—

THE COURT: It is unethical and improper and if I were him I would file a suit against you.

MR. COHN: I would stand to defend that suit at any time.

THE COURT: You may have to. He has the respect of the Court and respect of the lawyers in this building and the other Judges and he conducted a fine trial and the jury was out for over six hours. Now, there are instances in the case law of ineffective assistance of counsel but it certainly wasn't in this case.

MR. COHN: Your Honor, in that your Honor has stated your Honor's opinion prior to hearing the evidence—

THE COURT: I'm stating my opinion of him as a lawyer and I'm chastising you in open Court for making allegations like that against a fine lawyer.

MR. COHN: Your Honor, I then feel that because I feel that after an evidentiary hearing I would be able to demonstrate and support my allegations.

THE COURT: What you feel is a subject of opinion of your own, not shared by other lawyers that are in this courtroom right now and there are three of them, including—

MR. COHN: Your Honor has foreclosed the issue by making a

determination. I ask your Honor to recuse yourself for the remainder of the hearing."

At a hearing on July 8, 1981, the trial judge refused to recuse himself. In the instant case, it would have been the better practice if the trial judge had refrained from commenting on the allegation of ineffectiveness of trial counsel before ruling on the matter. A judge should resolve disputed issues of fact only after hearing all of the evidence with an open mind. (*People v. Johnson* (1972), 4 Ill. App. 3d 539, 541, 281 N.E.2d 451, 453.) However, the trial judge's comments do not justify a reversal. If any error was committed, it was harmless. We have read the entire record presented to this court, and we are of the opinion that defendant received a full and fair hearing.

■ Defendant next raises the issue of whether he was denied effective assistance of counsel. Defendant claims that trial counsel was unprepared in his examination of Bowling, that he did not properly investigate the circumstances of the lineup, and that he failed to assert suggestive aspects of the lineup identification of defendant. We reject defendant's contentions. The constitution does not require a new trial for every defendant whose counsel errs at trial, particularly in the absence of a demonstration that the outcome of a new trial would probably be different. (*People v. Greer* (1980), 79 Ill. 2d 103, 121, 402 N.E.2d 203, 212.) In the instant case, defendant has not shown that trial counsel's "errors" would have changed the outcome of the trial. As stated earlier, the testimony of the victim Hall was sufficient to prove defendant guilty beyond a reasonable doubt.

■ Defendant also contends that he was denied his sixth amendment right to counsel because, for a period of time, he and Bolton were represented by the same law firm. At the preliminary hearing, defendant and Bolton were represented by the firm of Lawrence Wolf Levin. At trial, defendant was represented by Steven Decker, an employee of Levin. After trial, the bond refund went to attorney Levin. Defendant argues that this prevented counsel from presenting statements made by Bolton exculpating defendant but inculpating Bolton, and it also prevented counsel from negotiating an agreement which would have benefited defendant but harmed Bolton. Again, we reject defendant's contentions. Joint representation of codefendants is not *per se* violative of constitutional guarantees of effective assistance of counsel. (*People v. Nelson* (1980), 82 Ill. 2d 67, 72, 411 N.E.2d 261, 264.) On appeal, defendants have the burden of showing that they had antagonistic defenses or that appointed counsel had other conflicts of interest in defending them during the criminal proceedings. (*People v. Doyle* (1978), 61 Ill. App. 3d 571, 575, 377 N.E.2d 1093, 1097.) A find-

ing of adverse interests cannot be based on mere assertion and unless the defendant can establish that such conflict in fact existed at trial, this court will not indulge in speculation or conjecture to determine whether separate counsel was required. (*People v. Doyle* (1978), 61 Ill. App. 3d 571, 575.) A conflict of interest will not be created out of mere conjecture as to what might have been shown. (*People v. Doyle* (1978), 61 Ill. App. 3d 571, 575.) We conclude that defendant did not establish that a conflict existed at the time of trial. Therefore, we hold that defendant was not denied effective assistance of counsel.

Defendant argues that the trial court erred in denying his motion to suppress the victim's in-court identification. Defendant claims that the lineup was unnecessarily suggestive because only two of the five persons in the lineup had full beards, one of them the defendant, and because only defendant was wearing a leather jacket. The offender had been described as bearded and wearing a leather jacket.

■ We reject defendant's argument. As the court stated in *People v. Anthony* (1980), 90 Ill. App. 3d 859, 863, 418 N.E.2d 757, 761:

> "Even assuming that some criticism of the lineup procedure be demonstrated valid, where the in-court identification had a sufficient origin independent of any possibly suggestive procedures the courts of Illinois have unanimously held that a proper in-court identification is sufficient for a conviction. In other words, where the identification of the defendant had an adequate origin independent of the previous identification procedures, this factor renders irrelevant any suggestability in connection with said procedure."

In our opinion, the victim's face-to-face confrontation with defendant in the two armed robberies clearly was sufficient to support an in-court identification. Therefore, we hold that the trial court properly denied defendant's motion to suppress the victim's in-court identification.

■ The final issue raised by defendant is whether the prosecutor's final argument was improper and prejudicial. Defendant finds objectionable the following statements by the prosecutor:

> "We are always in every case allowed to argue a second time. I do not fear this burden of proof beyond a reasonable doubt, but I accept it. The presumption of innocence is rebutted every day in every courtroom in this country.
>
> This burden of guilt beyond a reasonable doubt is not unreasonable nor insurmountable. It is met in criminal courts of this country every day. The penitentiary is full of people who are there because the People met their burden of guilty beyond a

reasonable [doubt]. And this burden has been met by the People in this case."

Defendant did not object to these comments when they were made and thus waived the error. (*People v. Hyche* (1979), 77 Ill. 2d 229, 241, 396 N.E.2d 6, 12.) Furthermore, even assuming defendant has not waived the error, a reversal is not warranted. In Illinois even though every defendant is entitled to a trial free from improper comments or arguments that engender prejudice, a verdict will not be set aside unless the remarks are clearly prejudicial, affecting the outcome of the case. (*People v. Trolia* (1982), 107 Ill. App. 3d 487, 504, 437 N.E.2d 804, 817.) In our opinion, the prosecutor's remarks were not a material factor in defendant's conviction and did not result in substantial prejudice to him.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, J., concurs.

PRESIDING JUSTICE ROMITI, dissenting:

I respectfully dissent.

Defendant's conviction was based on his identification by two eyewitnesses: Tom Hall, who was the victim of the robbery, and Georgia Bowling, a passer-by who identified defendant at trial as one of the two men she saw fleeing the scene. Yet the State failed to disclose that two days after the robbery Bowling had failed to identify the defendant in a lineup and had misidentified a police officer as one of the men she had seen after the robbery. Was this evidence material and did its nondisclosure prejudice the defendant? On three separate occasions during jury deliberations the jury sent to the trial judge questions concerning Bowling's testimony. Two of those questions specifically related to the issue of whether Bowling had previously identified the defendant in a lineup. Indeed, it is clear from one of those questions that some of the jurors mistakenly believed that Bowling had testified that she had previously identified the defendant in a lineup. Under these circumstances, where the State failed to disclose evidence which was favorable to the defendant and which specifically related to key identification testimony on which the jury focused its attention, I find the materiality of the evidence and the prejudice arising from its nondisclosure to be apparent. Accordingly, I would reverse defendant's conviction and remand for a new trial.