Ronald K. THOMPSON, Appellant,

v.

STATE of Iowa, Appellee.

No. 91–615.

Supreme Court of Iowa.

Nov. 25, 1992.

Michael A. Smith of Lundy, Butler & Smith, P.C., Eldora, for appellant.

Bonnie J. Campbell, Atty. Gen., Bruce Kempkes, Asst. Atty. Gen., James Beres, County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SNELL, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Appellant Ronald K. Thompson filed an application for postconviction relief, claiming he had been denied effective assistance of counsel during criminal case proceedings which culminated in his conviction for third-degree sexual abuse. The district court denied Thompson's application, ruling that his criminal case trial counsel did not render ineffective assistance. On Thompson's appeal, the court of appeals affirmed the postconviction court's ruling. Upon further review, we also agree with the district court's judgment and affirm.

*I. Background facts and proceedings.* Late at night on December 16, 1989, Thompson and three other Ellsworth junior college students went to the apartment of an Ellsworth football player, where one of the students obtained a key hidden outside and opened the door to get her purse. The football player's girlfriend was asleep in the apartment on a bed. Thompson evidently saw her.

Sometime later that night, Thompson allegedly went back to the apartment and raped the young woman sleeping inside.

Thompson, wearing the football player's hat and jacket, then went to the nearby men's dormitory and boasted to two other students that he had just had sexual intercourse with a football player's girlfriend. The students began guessing names. When they mentioned the young woman's boyfriend, Thompson laughed and left the room.

The young woman then appeared at the dormitory and told the same students, and eventually the police, that Thompson had just raped her.

Thompson was arrested and charged with third-degree sexual abuse. *See* Iowa Code § 709.4(1) (1989). Thompson demanded a speedy trial under Iowa Rule of Criminal Procedure 27(2)(b).

The district court ordered Thompson to produce blood and pubic hair samples for identification, which he did upon the advice of his attorney. Thompson's attorney told him the State probably wanted the blood sample to conduct a deoxyribonucleic acid (DNA) test. The attorney further advised Thompson that the DNA test is a virtually infallible method of identification. Believing the State would conduct a DNA test, the attorney did not seek independent testing on behalf of Thompson.

Approximately four days to one week before trial, Thompson's attorney discovered the State had *not* conducted a DNA test. Although the court offered to continue the trial for one week for Thompson to complete discovery, Thompson and his counsel decided to go to trial without DNA test results, believing they could win the case with an alibi defense.

At trial, a DCI criminalist testified she had performed blood-grouping and PGM factor[1] tests on specimens from the victim, the victim's boyfriend, Thompson, and semen stains found on the victim's underwear. The criminalist unequivocally testi-fied these test results definitely excluded the young woman's boyfriend as the source of semen. The criminalist further testified that Thompson was among the fourteen percent of black males who have the blood type and PGM factors matching the stains found on the victim's underwear.

Additionally, the trial court refused to admit evidence of the victim's past sexual conduct[2] to prove the source of semen because Thompson's attorney failed to timely file an Iowa Rule of Evidence 412 motion before trial.

A jury found Thompson guilty of third-degree sexual abuse.

After taking an appeal to this court, Thompson's counsel filed a motion to withdraw under Iowa Rule of Appellate Procedure 104(a) (counsel may withdraw if he or she cannot in good conscience find any nonfrivolous issues for appeal), which motion was granted. However, we reserved Thompson's right to file an application for postconviction relief concerning ineffective assistance of counsel.

Thereafter, Thompson applied for postconviction relief in the district court pursuant to Iowa Code chapter 663A (1989), alleging his defense counsel rendered ineffective assistance by failing to obtain independent DNA testing and to file a timely motion under Iowa Rule of Evidence 412(b)(2)(A). After an evidentiary hearing, the postconviction court denied Thompson's application.

Thompson now appeals that denial, arguing the district court 1) erred in not finding ineffectiveness of his criminal case counsel, and 2) abused its discretion in refusing to provide Thompson with present DNA testing of his semen.

■■■ *II. Ineffective assistance of counsel.* As an initial matter, we note that postconviction relief proceedings under Iowa Code chapter 663A are civil actions at law and are ordinarily reviewed on error. *Jasper v. State*, 477 N.W.2d 852, 855 (Iowa

---

1. "PGM" stands for phosphoglucomutase, an enzyme found in the blood and various other body fluids.

2. The victim and her boyfriend allegedly had intercourse approximately twenty-four hours before the rape.

1991). However, where the postconviction applicant asserts violations of constitutional safeguards, as Thompson does here, we make our own evaluation of the totality of the circumstances in a de novo review. *Id.*

■ To establish a claim of ineffective assistance of counsel, the applicant must show by a preponderance of the evidence that: 1) counsel's performance fell outside the normal range of competency; and 2) the deficient performance so prejudiced the defense as to deprive the criminal defendant of a fair trial. *Jones v. State,* 479 N.W.2d 265, 271–72 (Iowa 1991).

■ Counsel is presumed competent, and "[i]mprovident trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance of counsel." *Id.* at 272. Furthermore, we look at trial counsel's overall representation, rather than "isolated complaints about what counsel *might* have done...." *State v. Newman,* 326 N.W.2d 788, 795 (Iowa 1982) (emphasis in original).

■ *A. Counsel's failure to secure DNA testing.* Thompson claims his criminal case trial counsel was ineffective by assuming the State would obtain DNA testing and by failing to obtain independent DNA testing on behalf of Thompson. We believe counsel was not ineffective in those respects under this record.

We have previously discussed at length DNA, its reliability, and admissibility in general in *State v. Brown,* 470 N.W.2d 30, 31–33 (Iowa 1991). We also noted in *Brown* that the jury decides the weight to be given DNA and any attendant expert testimony when evaluating evidence. *Id.* at 32.

First, Thompson merely *assumes* the DNA test results would exonerate him; he ignores the possibility that the results could also conclusively identify him as the perpetrator. Testing which *could* have been exculpatory is equivalent to saying such testing is merely *potentially* helpful to the defense, and as such is thus not material. *Bear v. State,* 417 N.W.2d 467, 471 (Iowa App.1987).

Second, Thompson and his attorney were given an opportunity to continue the trial and obtain DNA testing. Although the trial court offered to continue the case for only one week, which was not enough time to obtain DNA test results, Thompson could have withdrawn his demand for a speedy trial so that he could undergo DNA testing, which may require approximately six to twelve weeks. Instead, knowing how conclusive DNA testing is considered to be, Thompson and his counsel elected the strategy of going to trial without DNA test results. They relied on an alibi defense and the assumed weakness of the State's case.

As stated above, improvident trial strategy and miscalculated tactics do not necessarily amount to ineffective assistance of counsel. Thompson was bound by his elected strategy.

Third, Thompson was not unduly prejudiced by not having DNA testing because he could have argued to the jury that, based on the criminalist's testimony, there was only a fourteen percent probability that a person of Thompson's race provided the semen in the underwear stain. Thompson could have argued that because this is not a very significant probability, it could raise a reasonable doubt as to his guilt.

Finally, there was sufficient evidence to convict Thompson even without DNA test results. Without hesitation, the victim identified Thompson as her assailant immediately after the rape and continually throughout the trial process. Other courts have denied a new trial to a defendant claiming ineffective assistance concerning an action of his counsel where the victim unequivocally identified the defendant at trial. *E.g., Stough v. State,* 62 Haw. 620, 618 P.2d 301 (1980) (no prejudice resulted from attorney's failure to make suppression motion regarding defendant's confession in light of victim's unequivocal identification testimony); *People v. Malone,* 114 Ill.App.3d 55, 69 Ill.Dec. 844, 448 N.E.2d 562 (1983) (no prejudice resulted from attorney's failure to investigate or attack at trial possibly improper line-up, in view of victim's identification testimony); *People v.*

*Monreal*, 42 Ill.App.3d 842, 1 Ill.Dec. 639, 356 N.E.2d 921 (1976) (new trial denied where evidence strongly identified petitioner as defendant); *Mitchell v. State*, 532 S.W.2d 219 (Mo.Ct.App.1976) (new trial denied where rape victim made unequivocal identification of petitioner in and out of court).

Additionally, other students testified Thompson boasted about having intercourse with a football player's girlfriend and laughed when they named the victim's boyfriend. These students testified Thompson was wearing the football player's jacket and hat when he spoke to them. These items had been in the player's room before the assault. Furthermore, the criminalist testified that her chemical and blood testing conclusively showed Thompson's blood type and PGM factors matched those found in the semen stain, and definitely excluded the victim's boyfriend as the source of semen in the stain. Even without DNA test results, all of this other evidence strongly identifies Thompson as the victim's assailant.

For these reasons, we agree with the postconviction court and find no basis to Thompson's claim of ineffective assistance of counsel regarding the failure to obtain DNA testing before the criminal trial.

■ *B. Failure to file Iowa Rule of Evidence 412 motion.* Thompson next claims his trial counsel was ineffective in failing to file an Iowa Rule of Evidence 412 motion to allow evidence of the victim's boyfriend as a possible source of semen found on the victim's clothing.

Apparently, the victim and her boyfriend had engaged in sexual intercourse the night before the rape. Thompson's trial counsel failed to file an Iowa Rule of Evidence 412 motion to attempt to get this evidence admitted to show a possible source of the semen was the victim's boyfriend, rather than Thompson. Because of counsel's failure to file the motion, the criminal court excluded this evidence at trial.

We conclude, however, that even had Thompson's counsel filed a timely rule 412 motion, Thompson was not ultimately prejudiced for several reasons.

Iowa Rule of Evidence 412 states, in pertinent part:

b. Notwithstanding any other provision of law, in a criminal case in which a person is accused of sexual abuse, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:

. . . .

(2) admitted in accordance with subdivision "c" and is evidence of:

(A) past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury. . . .

c. (1) If the person accused of sexual abuse intends to offer under subdivision "b" evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than fifteen days before the date on which the trial in which such evidence is to be offered is scheduled to begin. . . .

. . . .

(3) If the court determines on the basis of [a] hearing . . . that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial. . . .

■ Rule 412, Iowa's "rape shield" law, is an exception to the general rule that relevant evidence is admissible. *State v. Clarke*, 343 N.W.2d 158, 160–61 (Iowa 1984); *State v. Parsons*, 401 N.W.2d 205, 208 (Iowa App.1986). However, even relevant evidence is not constitutionally required to be admitted if the prejudicial effect outweighs the probative value. *Clarke*, 343 N.W.2d at 161; *Parsons*, 401 N.W.2d at 208.

■ The purposes of Iowa's rape shield law are to protect the victim's privacy, en-

courage the reporting and prosecution of sex offenses, and prevent the parties from delving into distractive, irrelevant matters. *Clarke,* 343 N.W.2d at 161–62; *Parsons,* 401 N.W.2d at 208–09.

In the present case, Thompson was not prejudiced by his criminal case trial counsel's failure to file a rule 412(b)(2)(A) motion because the motion could have been correctly overruled and the evidence excluded even if counsel had timely filed such motion. Even if the criminal court had found that the evidence of the victim's past sexual conduct fit the exception under rule 412(b)(2)(A), the evidence still would not be admissible if its probative value did not outweigh the danger of substantial prejudice, confusion of the issues, and misleading the jury. *Clarke,* 343 N.W.2d at 163. *See also* Iowa R.Evid. 412(c)(3).

In Thompson's case, the probative value of the evidence did not outweigh the danger of substantial prejudice. The blood-type testing that *was* done conclusively showed the victim's boyfriend could not have provided the semen in the underwear stain; therefore, evidence of the victim's past sexual conduct was immaterial. Because the blood group testing was conclusive, evidence of intercourse between the victim and her boyfriend would only confuse and mislead the jury. Such evidence would throw a smokescreen around the relevant issue of the identity of the assailant.

Thompson furthermore was not prejudiced by counsel's failure to file a rule 412 motion because other identification evidence was strong enough to support his conviction. The victim repeatedly and without hesitation identified Thompson immediately after the rape and throughout the trial process. Other students testified that Thompson boasted about having intercourse with a football player's girlfriend and that Thompson was wearing the football player's jacket and hat. The victim shortly thereafter told these same students that Thompson had raped her.

Because chemical tests conclusively excluded the victim's boyfriend as the source of semen in the underwear stain, and other evidence solidly identified Thompson as the assailant, we agree with the postconviction court and conclude Thompson was not prejudiced by his counsel's failure to file a rule 412 motion regarding the victim's past sexual conduct. As Thompson was not prejudiced, we find no ineffective assistance of counsel as to this assignment.

*III. Denial of DNA test before the postconviction relief trial.* After Thompson applied for postconviction relief, *see* Iowa Code chapter 663A, and before the postconviction trial, Thompson filed a motion asking the court to approve the expenditure of State money for a DNA test. Thompson claimed the DNA test should have been done before his criminal trial and would exonerate him. Thompson asserted that because the results would prove his innocence, he could then use them to establish his claim of ineffective assistance of counsel.

The court denied Thompson's request, noting that Thompson had chances before his criminal trial to obtain DNA testing but chose to proceed without such results. The court added that it would reconsider its ruling if Thompson's criminal conviction was set aside due to ineffective assistance of counsel in his prior criminal case.

For the above stated reasons in Division II, we conclude there was no ineffective assistance of counsel concerning Thompson's criminal trial. Thompson elected to go to criminal trial without the DNA test and should not now be given a new chance for a DNA test after suffering an adverse jury verdict. Therefore, we conclude no error exists as to this last assignment.

*IV. Disposition.* From our de novo review of the record, we conclude Thompson's criminal case counsel performed within the normal range of competency. We affirm the postconviction relief court's rulings and the court of appeals' decision.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.